BROWN, P. J., and CULLEN, J., concurred.

Judgment affirmed, with costs.

---

THOMAS F. BROWN, Respondent, *v.* ANNE BROWN, Individually and as Executrix, etc., of THOMAS BROWN, Deceased, Appellant, Impleaded with Another.

*Waiver of a defect in an action brought under chapter 487 of 1889 — a conversion of a minor's money by his father — it creates the relation of debtor and creditor and not of trustee and beneficiary — Statute of Limitations — application thereof to trustees and their cestuis que trust — constructive notice.*

If, in an action brought under the provisions of chapter 487 of the Laws of 1889, the plaintiff fails to sue in behalf of himself and other creditors, such defect is waived by the failure of the defendant to raise the question by answer or demurrer.

Upon the trial of an action brought by a son against the executrix of his father, it appeared that the father, without authority, had received money belonging to the plaintiff, then a minor, which was the proceeds of a judgment recovered by the infant against a railroad company; that the son knew before his majority that his father had sued the railroad company for him and had recovered judgment (but he did not know the amount of the recovery), and that the money had been paid to his father.

*Held,* that the relation which the law created between the father and son in such a case was that of debtor and creditor and not that of trustee and beneficiary;

That a cause of action accrued to the son when his father received the money;

That the six years' Statute of Limitations, to be computed from the time that the infant became of age, was applicable.

As long as there is a continuing and subsisting trust, acknowledged or acted upon by the parties, the Statute of Limitations does not apply, but if the trustee denies the right of his *cestui que trust* and the possession of the property becomes adverse, lapse of time from that period may constitute a bar in equity; but other trusts, which afford ground for an action at law, are not exempt from the operation of the statute.

Where a party has knowledge of such facts as would induce a man of ordinary prudence to make further inquiry, a failure to make inquiry is visited with all the consequences of notice.

CULLEN, J., dissenting.

APPEAL by the defendant, Anne Brown, individually and as executrix, etc., of Thomas Brown, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 22d day of May, 1894, upon the decision of the court rendered after a trial at the Kings County Special Term, and, upon the coming in of a referee's report, adjudging that a certain gift of $4,000 of Thomas Brown, deceased, to the defendant, was made with the intent to hinder, delay and defraud the plaintiff, and that such gift was void as to him, with notice of an intention to bring up for review upon such appeal the interlocutory judgment made at the Kings County Special Term and entered in said clerk's office on the 29th day of March, 1894.

*John F. Clarke,* for the appellant.

*Horace Secor,* for the respondent.

DYKMAN, J.:

The plaintiff in this action is the son of Thomas Brown, deceased, who died on the 28th day of February, 1893, leaving a last will and testament, which has been duly proved and admitted to probate.

The defendant, who was the second wife of the deceased and the stepmother of the plaintiff, was appointed the executrix of the will of her husband and duly qualified as such.

In the year 1876 the plaintiff was injured by the Brooklyn City railroad, and his father was appointed his guardian *ad litem* for the purpose of commencing an action for the plaintiff to recover the

## 162 BROWN v. BROWN.

damages he sustained from such injuries. The plaintiff was then an infant about fourteen years old.

There was a recovery in favor of the plaintiff in that action of $1,500 on the 2d day of April, 1877, and his attorneys paid over to his father the sum of $1,262.50, the amount of the recovery, less the costs and expenses. That payment was so made to the guardian on the 15th day of May, 1877. The plaintiff became of full age March 25, 1884, and this action was commenced in July, 1893.

The father of the plaintiff did not give the security required by the law to authorize him to receive the money, and the trial judge has found that the plaintiff learned of the collection of said money about December, 1891.

On the 30th day of March, 1892, the father of the plaintiff sold and conveyed certain real property which he owned, and after making certain payments from the proceeds of such sales he gave the balance of $4,000 to his wife, Anne Brown, the defendant in this action. Such gift divested the deceased, Thomas Brown, substantially of all his property, and the trial judge has found, upon sufficient facts and circumstances, that the same was made with intent to defraud the plaintiff.

This action was commenced in July, 1893, to set aside and nullify the gift of $4,000 to the defendant and compel her to account for that sum, with interest, and for the recovery of a judgment against her for the sum of $1,711, with interest from May 20, 1877, and for other relief.

The cause was tried before a judge without a jury, and he decided in favor of the plaintiff and found the facts recited above in this opinion.

A judgment has been entered upon the decision of the judge, in favor of the plaintiff against the defendant, declaring the gift of $4,000 to the defendant by the plaintiff's father void, as having been made to hinder and defraud the plaintiff in his lawful demands against his father, and awarding a personal judgment against the defendant in favor of the plaintiff for $2,777.89.

The action was authorized by chapter 487 of the Laws of 1889, which provides that any creditor of a deceased insolvent debtor having a claim or demand against the estate of such deceased debtor exceeding in amount the sum of $100, may, for the benefit of himself and other creditors interested in the estate of such deceased

debtor, disaffirm and treat as void all acts done and conveyances made in fraud of the rights of any creditor by such deceased debtor, and for that purpose may maintain any necessary action to set aside such transfers or acts, and for the purpose of maintaining such action it shall not be necessary for such creditor to have obtained a judgment upon his claim or demand, but such claim or demand, if disputed, may be proved and established upon the trial of such action.

The plaintiff did not sue in behalf of himself and other creditors, but that defect was waived by a failure to raise the question by answer or demurrer.

It became necessary, however, for the purpose of administering the full relief contemplated by the statute to ascertain in some way the other creditors of the deceased if any there were.

For that purpose an interlocutory judgment was entered, appointing a referee to advertise for creditors, and, upon the coming in of that report, a final judgment was entered as stated above.

The defendant has appealed from both judgments. The serious and important question in the case is whether the claim of the plaintiff is barred by the Statute of Limitations.

It is the insistence of the defendant that the deceased received the money recovered from the railroad company without authority and under circumstances which rendered it his duty to pay it over to the plaintiff at once ; that an action for money had and received could have been maintained for its recovery without any demand, and, therefore, the Statute of Limitations commenced to run upon the receipt of the money.

On the other hand, the plaintiff contends that the deceased was the trustee of an express trust and received the money in question in that capacity, and, therefore, the statute did not begin to run against the plaintiff until the deceased openly renounced or repudiated the trust to the knowledge of the plaintiff. Upon that question of the Statute of Limitations our conclusion is in favor of the appellant.

The father of the plaintiff received the money of the plaintiff, which was the proceeds of his recovery against the railroad company, without authority, and, as he had no right to receive it, he was destitute of authority to retain it.

The relation which the law created between them was that of debtor and creditor, and not that of trustee and beneficiary.

There was neither trustee, trust fund nor beneficiary within the legal meaning of those terms. It was neither the intention or contemplation of either party to create a trust, and the deceased was charged with no trust with respect to the money he received, either in its management or control. In the case of *Kane* v. *Bloodgood* (7 Johns. Ch. 90), Chancellor KENT said: "The word trust is often used in a very broad and comprehensive sense. Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law, for money had and received, or in equity as a trustee, for a breach of trust." According to this principle, every lawyer who collects money for his client; in fact, every one who receives money for another, holds the same in trust.

But such persons are not trustees of a subsisting trust in the sense in which that term is legally and properly employed. They receive money belonging to another, which, according to equity and good conscience, they are bound to pay over and they become debtors for the same.

It is true that persons receiving money in a fiduciary capacity are sometimes denominated trustees *ex malofficio* and trustees *de son tort*, but when such terms are applied they are employed only to designate those implied trusts which the law sometimes raises for purposes of justice, and to such trusts the ordinary rules of limitation apply. The six years' statute is applicable. (*Mills* v. *Mills*, 115 N. Y. 85.)

Mr. Perry, in his work on Trusts (§ 245), says: "A person may become a trustee by construction by intermeddling with and assuming the management of property without authority," but such persons are not trustees of an actual subsisting trust. Such trusts are continuous, and have well-defined characteristics which impart to them validity and vitality, and require administration in the interest of a beneficiary or fide commissary, a term which Judge STORY deems a euphonious substitute for *cestui que trust*, which is an awkward, barbarous phrase. (Story's Eq. Juris. § 321, and note.)

In such a trust the statute does not begin to run until the trustee has renounced the trust to the knowledge of his beneficiary or fide commissary. (*Lammer* v. *Stoddard*, 103 N. Y. 673.)

The whole doctrine is tersely stated in the head note to the case of *Kane* v. *Bloodgood* (*supra*), as follows : " As long as there is a continuing and subsisting trust acknowledged or acted on by the parties, the statute does not apply ; but if the trustee denies the right of his *cestui que trust*, and the possession of the property becomes *adverse*, lapse of time from that period may constitute a bar in equity, but other trusts which are the ground of an action at law are not exempted from the operation of the statute." This case falls into the last category mentioned, and a cause of action accrued to the plaintiff when his father received his money.

The case of *Park* v. *Satterthwait* (132 Ind. 411) is quite similar to this, and is very instructive upon the questions here involved.

There is, however, another question for solution. The plaintiff insists further that the Statute of Limitations did not commence to run against him in respect to his claim against his father until March, 1892, because he had no knowledge of the receipt of his money by his father before that time, and that position is based upon the following provision of the statute :

" Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, except in one of the following cases : Where the right grows out of the receipt or detention of money or property by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends." (§ 410, Code Civ. Proc.)

The trial judge has found that the plaintiff learned of the collection of the money by his father about December, 1891, but if that is to be construed as a finding that he had no knowledge of such payment previous to that time, then the finding is entirely destitute of evidence for its support. There is no such proof in the case, and there is no testimony from which any such inference can be naturally drawn.

On the contrary, the fair and natural inference from the testimony is the other way and adverse to the plea of ignorance set up by the plaintiff.

SECOND DEPARTMENT, DECEMBER TERM, 1894.          [Vol. 83.

Let us examine.  In the first place the trial judge has found as a fact that the plaintiff knew of the recovery in his favor against the railroad company before his majority, but not the amount.

In the next place the plaintiff stated in his verified complaint that he had almost lost all recollection of the fact that a suit had been brought for the recovery of damages for his injuries, and that his father had received any money for him as guardian *ad litem ;* that · these facts were brought to his mind from a conversation he had with his friends.

The language plainly implies that he had knowledge of the facts he states, but had almost lost all·recollection of them, and that they were brought again to his mind by a conversation with his friends.

The same inference is easily drawn from the circumstances which cluster round the transaction.  The plaintiff was fourteen years old at the time of the trial, and testified in his own behalf.  He recollects the incident and remembers stating to the jury the manner in which he was injured, and an event so disastrous to him would not fade from his memory as every step he took in walking reminded him of his injury.

He knew he had not received any money on account of the recovery, and at his age he would naturally inquire whether it had been paid or remained unpaid.

His knowledge of the payment of the money to his father at the time is the more readily inferred from his silence on the subject when giving his testimony in this action.

It was not only essential, but vital, to prove his ignorance, and it was a fact which he was required to establish, yet he did not swear to it.

His testimony is guarded.  He says his attention was directed to the suit brought in his behalf in 1876, about two years ago, but that is far from saying he was ignorant of the fact, or did not remember it.  Besides that, he admitted in his testimony that he remembered the suit and remembered being a witness upon the trial.

The failure of the plaintiff to testify to his ignorance is very significant, and justifies a presumption that he could not do so because it was not true, and that he was in possession of such knowledge all along.

Besides all this, the plaintiff encounters this well-recognized principle of law, where a party has knowledge of such facts as would

induce a man of ordinary prudence to make further inquiry, a failure to make inquiry is visited with all the consequences of notice. (Wade on Law of Notice, § 11.)

The rule is peculiarly applicable to the plaintiff. He knew his father had sued the railroad company for him and recovered; he knew the money had not been paid to him; he knew his father could furnish him all the information required; if his father refused to do so he could have learned all he required from the officers of the railroad company; if he was ignorant, he was put upon inquiry, and such inquiry would have yielded all the knowledge he required. We are, therefore, on this ground alone justified in charging the plaintiff with full knowledge of the receipt of the money by his father.

A more general view leads to the same conclusion.

Here we have the case of a lad fourteen years of age, when the mind is quite mature, receiving an injury to his leg which necessitates amputation. His father, as his guardian, brings a suit to recover the damages he has sustained, and he is present at the trial and testifies in his own behalf. There is a verdict in his favor and his father receives the money. Thereafter he resides with his father for many years, even after he attains his majority.

It is inconceivable that, during all that time subsequent to the receipt of the money, its reception was never mentioned by either the plaintiff or his father, and that the plaintiff remained in ignorance of its collection until about two years ago.

We, therefore, reach the following conclusions:

*First.* The receipt of the money created the relation of creditor and debtor between the plaintiff and his father.

*Second.* That, although an action could have been commenced in the name of the plaintiff for the recovery immediately after it was received, yet, the Statute of Limitations did not commence to run against the plaintiff until he attained his majority.

*Third.* That the disability of the plaintiff resulting from his infancy was removed by the attainment of his majority more than six years previous to the commencement of this action, and that the six years' Statute of Limitations is applicable to this action.

*Fourth.* That the plaintiff must be deemed to have had knowledge of the receipt by his father of the money recovered from the

railroad company immediately after its reception, and does not, therefore, come within the exception provided in subdivision 1 of section 410 of the Code of Civil Procedure.

*Fifth.* That the judgment should be reversed and a new trial granted, with costs to abide the event.

BROWN, P. J., concurred; CULLEN, J., dissented.

Judgment reversed, new trial granted, costs to abide event.