(No. 11544.—Judgment affirmed.)

MARIA P. BARNES, Defendant in Error, vs. MARY C.
BARNES, Admx., Plaintiff in Error.

*Opinion filed February 20, 1918—Rehearing denied April 3, 1918.*

1. ACCOUNTING—*court must first determine whether disputed right to accounting exists.* If the right to an accounting is disputed the first question to be determined by the court is whether there is such a right, and if the finding is in favor of the complainant the decree is interlocutory, to be followed by the accounting.

2. SAME—*when it will be presumed bill was dismissed because complainant had no right to an accounting.* Where a decree dismissing a bill for an accounting makes no finding of any fact and does not state an account showing there is nothing due the complainant, it will be presumed, on appeal, that the bill was dismissed on the ground that complainant was not entitled to an accounting.

3. SAME—*fraudulent act as to particular items of account will not bar right to an accounting.* Where the origin of a claim in equity for an accounting is not inequitable a fraudulent act in relation to particular items or portions of the account will not bar relief as to other claims but will be proper for consideration in stating the account under rules of laws applicable in such cases.

4. SAME—*a complicated account cannot be stated by the court.* Where the items in an account are few the court may state the account, but where the account consists of many items, covering a great length of time, and the testimony is conflicting, the court can not proceed to an accounting until the account has been stated by a master and objections have been settled by him, as the duties of the court, the public interest and the rights of litigants forbid the examination by the court of complex accounts.

5. TRUSTS—*when Statute of Limitations does not begin to run against a trust until relation is terminated.* A voluntary, continuing, equitable trust in personal property may be created by parol, and the Statute of Limitations does not begin to run against such a trust until the trust is repudiated or the trust relation comes to an end, which will be at the death of one of the parties where the trust has not been repudiated or denied during his lifetime.

6. EQUITY—*maxim that party must come into equity with clean hands applies only to substance of complaint.* The maxim that he who comes into a court of equity must come with clean hands is limited in its application to where the substance of the complaint is inequitable, and the misconduct relied upon as precluding resort to equity must apply to the particular subject matter.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

HENRY W. MAGEE, ELMER W. ADKINSON, and SAM-UEL B. KING, for plaintiff in error.

OSCAR E. LEINEN, (ROBERT F. KOLB, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, Maria P. Barnes, filed her bill in the circuit court of Cook county against the plaintiff in error, administratrix of the estate of her deceased husband, Erastus A. Barnes, who was a brother of the complainant, for an accounting of moneys and securities claimed to have been entrusted by the complainant to her brother for investment and safe keeping. The bill was answered with a categorical denial of each allegation of the bill concerning the trust and the right to an accounting, and the issues were referred to a master in chancery to take the evidence and report the same, with his conclusions of law and fact. The master in chancery heard the evidence of the complainant, and the defendant moved the master, on such evidence, to find the facts in her favor and recommend that the bill be dismissed for want of equity. The master having declined to entertain the motion, the court directed him to rule upon it and certify his report to the court. Pursuant to that order the master made a report containing a detailed finding of facts and conclusions of law that the trust existed and the complainant was entitled to an accounting. He over-ruled objections to the report and they stood as exceptions before the court. The matter coming on before the court, it was stipulated by the parties that further proceedings in

the case should be had before the court. A great amount of additional evidence was then introduced before the court, so that at the conclusion of the hearing there were more than 10,000 typewritten pages and a vast number of exhibits. The court, without making any findings of fact, dismissed the complainant's bill for want of equity, and the complainant appealed to the Appellate Court for the First District. That court reversed the decree and remanded the cause, with directions to again refer it to a master in chancery to resume the hearing where the court took it up. This court granted a writ of *certiorari* to bring the record here from the Appellate Court for review.

In case a bill is filed for an accounting and the right is disputed, the first question to be determined is whether there is such a right which is found by the court, and if the finding is in favor of the complainant the decree is interlocutory, to be followed by the accounting. In this case the court heard all the evidence, both that which related to the right to an accounting and· that which concerned numerous items of the account. As the decree made no finding of any fact and did not state an account showing there was nothing due the complainant, the only possible ground for dismissing the bill was that complainant was not entitled to an accounting. It should not be presumed that the court attempted to state an account in a case where by the chancery practice the court could not do it but could by an agreement of the parties hear the evidence as to a right to an accounting. The conclusion was contrary to the· evidence, which clearly established the complainant's right to have an account between herself and the estate of her deceased brother stated. Erastus A. Barnes died on January 7, 1909, in his sixtieth year, and they had lived together most of the time for thirty-seven years, both being school teachers and unmarried until the marriage of Erastus to the defendant, about four months before his death. Each one had executed a will in favor of the other,

the will of Erastus being revoked by his marriage. Their relations were most intimate and confidential, and there was evidence of a great many witnesses that Erastus received and took charge of money of the complainant and invested it in stocks and securities for her. Aside from disputed questions there is no denial of the fact that for several years before the death of Erastus stocks, bonds and securities were contained in a safety deposit vault held jointly by him and the complainant. After his death the parties to this suit, with their solicitors, went to the safety deposit vault and opened the box and took out the securities. Some of them appeared to belong to Erastus and some to the complainant and there were others the ownership of which was doubtful. It was impossible to determine the ownership of these doubtful securities without evidence. It is not denied that the relations of the parties were confidential,—at least in respect to some of their business transactions,—and that there were unsettled matters between them. The charge of the bill that a trust existed and had never been settled was proved, and a decree dismissing the bill for want of equity was wrong.

It is contended that the decree dismissing the bill was justified on two grounds: First, that the suit was barred by the Statute of Limitations; and second, that the complainant was not entitled to the relief prayed for because she did not come into a court of equity with clean hands. The trust proved was a voluntary, continuing, equitable trust in personal property, which may be created by parol. (*Price* v. *Laing,* 152 Ill. 380; *Maher* v. *Aldrich,* 205 id. 242.) The Statute of Limitations does not begin to run against such a trust until the trust is repudiated or the trust relation between the parties comes to an end. The trust not having been repudiated or denied by Erastus A. Barnes the statute did not begin to run until his death. (*Hancock* v. *Harper,* 86 Ill. 445; *Chicago and Eastern Illinois Railroad Co.* v. *Hay,* 119 id. 493; *Horne* v. *Ingraham,* 125 id. 198;

*Pierce* v. *Perry,* 189 Mass. 332; 17 R. C. L. 795.) The bill was filed on January 4, 1910, within a year after the death of Erastus A. Barnes, and the suit was not barred by the Statute of Limitations.

He who comes into a court of equity must come with clean hands and one who does iniquity cannot have equity, but that maxim is limited in its application to where the substance of the thing is inequitable and the iniquity must apply to the particular subject matter. It is not sufficient to bar relief that inequitable conduct should relate to the proof of some item or some fact, and where the origin of the claim is not inequitable a fraudulent act in relation to it will not bar relief. (*Goodwin* v. *Hunt,* 3 Yerg. 124; 1 Pomeroy's Eq. Jur. sec. 399; *City of Chicago* v. *Stock Yards Co.* 164 Ill. 224; 10 R. C. L. 140.) The ground upon which it is claimed in this case that the complainant could not have equity is that she had fabricated evidence. The claim is that twelve letters purporting to have been written by Erastus A. Barnes were forgeries. There were a large number of other letters tending to show the relation of the parties and there is no finding in the decree as to the alleged forgeries. But assuming that the court found the letters to be forgeries, such a fraudulent act as to items or portions of the account would not bar relief as to other items or claims but would be proper for consideration in stating the account under the established rules of law applicable in such cases.

The court erred in dismissing the bill for want of equity. The Appellate Court did not err in reversing the decree and remanding the cause for the taking of the account.

The right to an accounting having been determined, the account is of such a nature that the statement of it must be referred to a master in chancery. Where the items in an account are few the court may state the account, but where the account consists of many items, covering a great length of time, and the testimony is conflicting, the court

cannot proceed to an accounting until the account has been stated by a master and objections to the account settled by him. The duties of the court, the public interest and the rights of litigants forbid the examination by the court of intricate and complex accounts. (*Brockman* v. *Aulger,* 12 Ill. 277; *Sallee* v. *Morgan,* 67 id. 376; *Payne* v. *Newcomb,* 100 id. 611; *Beale* v. *Beale,* 116 id. 292.) A complicated account cannot be stated by the court even by agreement of the parties. (*Riner* v. *Touslee,* 62 Ill. 266; *Mosier* v. *Norton,* 83 id. 519; *French* v. *Gibbs,* 105 id. 523.) This case, in which the court heard a vast amount of evidence and considered a record of over 10,000 pages, illustrates the importance and necessity of adherence to the settled rule of chancery practice. Upon the re-instatement of the case in the circuit court the cause is to be referred to a master in chancery to state the account upon the evidence already in the record and any further evidence the parties may desire to offer.

The Appellate Court ordered the costs of the appeal to that court to be taxed one-half to the complainant and one-half to the defendant as administratrix, to be paid in due course of administration, and that order is assigned as error. Section 22 of the Cost act provides that if a judgment is reversed on appeal or error the complainant or plaintiff in error shall recover costs, and it is only where a judgment or decree shall be reversed in part and affirmed in part that costs may be apportioned between the parties under section 24. There is no cause for complaint that only half of the costs were taxed to the defendant, and the suit being to recover from the estate, it was proper to order the costs paid in due course of administration.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*