119 So.2d 23

Robert S. GORDON and Fair Park Little League, Inc.

v.

CENTRAL PARK LITTLE BOYS LEAGUE.

6 Div. 92.

Supreme Court of Alabama.

March 10, 1960.

Grover S. McLeod, Birmingham, for appellee.

---

Robt. S. Gordon and Chas. Cleveland, Birmingham, for appellants.

**314**

COLEMAN, Justice.

Appellee, an unincorporated association, filed bill in equity against "Robert S. Gordon, Fair Park Little League, Inc., a Corporation, and B. R. Williams, Trustee." From a decree overruling demurrer to the bill, Robert S. Gordon and the corporate respondent have appealed.

The subject matter of the suit is 121 baseball uniforms. The relief sought is a declaratory judgment to the effect that respondents have no right, title, or interest in the uniforms and a temporary injunction restraining the prosecution of two actions at law then pending in the Intermediate Civil Court of Birmingham. The two actions are discussed below.

After hearing, the temporary injunction was granted, and a subsequent motion to dissolve or discharge the same was overruled.

Appellants filed a plea in abatement to which appellee demurred. The demurrer was sustained.

Appellants propounded interrogatories to appellee and later filed a motion to dismiss the bill for failure of appellee to answer the interrogatories. Appellants' motion to dismiss was overruled.

The averments of the bill necessary to an understanding of the case are as follows:

The members of the appellee association are adult residents of the Central Park area in the western section of Jefferson County. The association was formed January 12, 1955, and named "Fair Park Little League." A copy of the constitution of Fair Park Little League is made an exhibit to the bill, and the stated objective is to implant the ideals of sportmanship, honesty, loyalty, courage, and reverence in the boys of the community. Provision is made for election of officers and government of the affairs of the association.

The purpose of the association was to furnish facilities and leadership so that boys aged 9 to 12 years might play baseball. The association affiliated itself with "Little League Baseball, Inc.," of Williamsport, Pennsylvania, for one season. Funds were solicited and equipment, including the uniforms in dispute, was purchased with the funds donated. The constitution provided that "The Commissioner shall be the sole owner. The commissioner shall be responsible to the board of directors * * * for the properties of the league." B. R. Williams was the Commissioner. After the 1955 baseball season, the uniforms had been placed in the shop of Fairfield Dry Cleaning Company for cleaning and storage.

On October 9, 1955, at a meeting of officers and members, called for the purpose of discussing the issue of segregation, a motion was placed before the directors and members as to whether they wished to affiliate with "Little League, Inc.," which was encouraging "integration," or with "Little Boys League, Inc." of South Carolina, which was encouraging separation of the races. A copy of the minutes of the meeting are made exhibit to the bill. The minutes show that after discussion, a vote was taken by families who had boys playing ball, one vote to a family. The result was "26 to 6 to franchise" with the South Carolina organization.

On November 28, 1955, the directors voted unanimously to change the name of the association to Fair Park Little Boys League and to affiliate with Little Boys Baseball, Inc., in 1956.

On December 5, 1955, "Organizational Meeting" was held at which officers were selected for the "New Fair Park Little Boys Baseball League."

A further meeting was held March 6, 1956, at which the "League Name An-

nounced Originally As Fair Park Little Boys League Changed To Central Park Little Boys League." A copy of minutes of each of the last three meetings is set out below.

On March 30, 1956, a detinue suit, No. 90401, was filed by Fair Park Little League, Inc., a Corporation, apparently the corporate appellant, against the dry cleaning company, claiming title to the 121 uniforms. The dry cleaner disclaimed ownership, and B. R. Williams, apparently the respondent described as trustee, filed affidavit that he was legal owner of the property in dispute.

On April 16, 1956, in Case No. 86480, in the same Intermediate Court, styled Robert S. Gordon v. B. R. Williams, Robert S. Gordon levied execution on the uniforms to satisfy his judgment against Williams. That judgment is alleged to be a personal judgment against Williams and in no way pertained to appellee or to Williams as trustee of said property. The bill avers that Robert S. Gordon was attorney for plaintiff in Case No. 90401, and is a director of "Little League, Inc."

On May 7, 1956, the original bill of complaint was filed in the instant case.

Assignment of Error 13 asserts that the court erred in overruling respondents' Motion to Dismiss complainant's Bill of Complaint for failure to answer interrogatories. The right to appeal is statutory. Tarvin v. Tarvin, 266 Ala. 214, 95 So.2d 397. We find no statutory authority allowing an appeal from a decree overruling a motion to dismiss for failure to answer interrogatories propounded under Equity Rule 39(a), Title 7, Appendix, Code 1940, which is cited by appellants to support the error here assigned. Rosenau v. Powell, 173 Ala. 123, 55 So. 789, also cited by appellants, was an appeal from a final decree. No final decree has been rendered in the case at bar. The only statutory authority for appeals from interlocutory decrees in equity is that given by § 755, Title 7, Code 1940. Tarvin v. Tarvin,

supra. An appeal will not lie from an order or decree overruling a motion to dismiss. Mabry v. Dickens, 31 Ala. 243; Ex parte Little, 266 Ala. 161, 95 So.2d 269. If no provision is made by law for an appeal from an interlocutory decree, such decree may not be assigned as error on appeal from another interlocutory decree. Fogleman v. National Surety Co., 222 Ala. 265, 132 So. 317; Land v. Cooper, 244 Ala. 141, 12 So.2d 410. We cannot, therefore, on the present appeal consider Assignment of Error 13.

Assignment of Error 14 asserts that the court erred in overruling the motion to dissolve the temporary injunction. The motion to dissolve was overruled July 17, 1956. No appeal was taken from that order. An appeal from such an order must be taken within 30 days. Title 7, § 757, Code 1940, as interpreted in the cases of Trump v. McDonnell, 112 Ala. 256, 20 So. 524, and State v. Seminole Bottling Co., 235 Ala. 217, 178 So. 237; Francis v. Scott, 260 Ala. 590, 72 So.2d 93. The instant appeal was taken October 22, 1956, and comes too late as an appeal from an interlocutory order overruling a motion to dissolve or discharge a temporary injunction. Moreover, on appeal from a decree overruling a demurrer to a bill in equity, the appellant cannot assign as error an interlocutory decree rendered over thirty days before the appeal was taken. Foley v. Leva, 101 Ala. 395, 13 So. 747; Kyser v. American Surety Co. of New York, 213 Ala. 614, 105 So. 689; McCary v. Crumpton, 263 Ala. 576, 83 So.2d 309. On this appeal we cannot review the order overruling the motion to dissolve the temporary injunction.

Assignment of Error 15 asserts that the court erred in sustaining demurrer to respondents' plea in abatement. The proper method of testing the sufficiency of a plea to a bill in equity is to set it down for hearing and have the court make an order as to whether it is sufficient. Bullen v. Bullen, 231 Ala. 192, 164 So. 89; Little

v. Little, 249 Ala. 144, 30 So.2d 386, 171 A.L.R. 1399. If, however, the order sustaining the demurrer be treated as a proper one holding the plea insufficient, it is not appealable and is not subject to assignment of error on the present appeal from the interlocutory order overruling the demurrer to the bill. Westbrook v. Inglenook First Methodist Church, 262 Ala. 652, 80 So.2d 726; Cates v. Cates, 264 Ala. 628, 89 So.2d 69.

■ Assignments of Error 16, 17, and 18 assert that the court erred in ordering the issuance of the temporary injunction. The record shows that on presentation of the application for temporary injunction to the circuit court judge on May 8, 1956, he ordered the same set for hearing May 17, 1956. The same was reset for June 13, 1956, and on that day an order was made granting the injunction as prayed for. The judge apparently undertook to follow the procedure provided for by § 1054 et seq., Title 7, Code 1940. Section 1057, Title 7, Code 1940, provides that from an order granting or refusing injunction, "* * * an appeal will lie * * * within ten days * * *." As we have already indicated, ten days after June 13, 1956, had long since expired before the instant appeal was taken on October 22, 1956. For the reasons already stated with respect to Assignment of Error 14, we cannot, on the present appeal, review the order granting the temporary injunction.

Assignments of Error 1 to 12 assert that the court erred in overruling the demurrer to the bill. Appellants argue two propositions .to sustain the demurrer. First, appellants say the allegations of the bill fail to show that appellee is the beneficial owner of the uniforms, and, Second, the averments of the bill fail to show appellee's right to proceed in equity instead of at law.

■ The second proposition is without merit. The averments of the bill show that title and right to possession of the property in suit were reposed in the respondent Williams for the benefit of the association entitled to use of the property.

"In its simplest elements a trust is a confidence reposed in one person, by and for the benefit of another, with respect to property held by the former, for that other's benefit. The person in whom this confidence is reposed and who holds the title to the property in question is the trustee; and the person for whose benefit the property is so held by the trustee is the cestui que trust, or, as formerly referred to in the Roman law, the fidei-commissarius. Brown v. Brown, 83 Hun 160, 164, 31 N.Y.S. 650; Carter v. Gibson, 29 Neb. 324, 332, 45 N.W. 634, 26 Am.St.Rep. 381; 3 Pom.Eq.Jur. § 1055; Deming v. Lee, 174 Ala. 410, 56 So. 921; Butts v. Cooper, 152 Ala. 375, 44 So. 616; Coleman v. Coleman, 173 Ala. 282, 55 So. 827; Hughes v. Letcher, 168 Ala. [314] 316, 52 So. 914.

"No express words are necessary to the creation of a trust if that intention appears. Gifford v. Rising, 51 Hun 1, 3 N.Y.S. 392. It may be inferred from the facts and circumstances of the case. Coleman v. Coleman, supra; Butts v. Cooper, supra; O'Neal [O'Neil] v. Greenwood, 106 Mich. 572, 582, 64 N.W. 511; Hedges v. Keller, 104 Ind. 479, 3 N.E. 832." Teal v. Pleasant Grove Local Union No. 204, Farmers' Educational & Co-Operative Union of America, 200 Ala. 23, 25, 75 So. 335, 337.

■ The purpose of the instant suit is to preserve the trust property for the beneficial owner.

"It is well settled by the decisions of this court, which are in accord with the weight of authority, that an oral express trust in personalty may be created; that such trust does not offend the statutes of fraud, and may be established and enforced in equity. Moore v. Campbell, 113 Ala. 587, 21 So. 353; Id., 102 Ala. 445, 14 So. 780; Bishop's Heirs v. Administrator & Heirs of Bishop, 13 Ala. 475; Barrell v. Hanrick, 42 Ala. 60; Hill v. Hill, 216 Ala. 435, 113 So. 306; 26 R.C.L. 1194, § 30; Barnes v. Barnes, 282 Ill. 593, 118 N.E. 1004, 4 A.L.R. 4;

Straw v. Mower, 99 Vt. 56, 130 A. 687." City Bank & Trust Co. v. Gardner, 225 Ala. 136, 137, 138, 142 So. 535.

If the appellee is shown by the bill to be entitled to the beneficial use of the trust property, then the suit is properly brought in equity.

Upon consideration of the amended bill against demurrer, however, we are of opinion that the first proposition is well taken. This court has said:

"'An eminent authority in the field has summarized the prerequisites of action for declaratory judgment in this way: "* * * the conditions of the usual action, procedural and substantive, must always be present, namely, * * * a sufficient legal interest in the moving party to entitle him to invoke a judgment in his behalf. * *" Borchard, Declaratory Judgments, 2d Ed. (1941), p. 26. * * *.' Love v. Rennie, 254 Ala. 382, 389, 48 So.2d 458, 465." Chancey v. West, 266 Ala. 314, 317, 96 So.2d 457, 459.

"'* * * This court has said that, "Ordinarily where the bill for a declaratory judgment shows a bona fide justiciable controversy which should be settled, the demurrer thereto should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper to introduce on submission for final decree." * * * In other words "the test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theories and contentions but whether he is entitled to a declaration of rights at all." Authorities supra. * * * Darling Shop of Birmingham v. Nelson Realty Co., 255 Ala. 586, 590, 52 So.2d 211, 214.'" Chancey v. West, supra, 266 Ala. at pages 317 and 318, 96 So.2d at page 459.

Appellants contend that the averments of the bill, as shown by the minutes of the several meetings attached to the bill and made a part thereof by reference, do not show that appellee is the successor in interest of the original association, that is, the Fair Park Little League.

The bill avers:

"(D) The property had been placed in the Fairfield Dry Cleaning Company's shop to store for the winter and dry clean, by the officers of the Fair Park Little League Association, the same association which is now known as the Central Park Little boys League Association."

The quoted averment is to the effect that the property in dispute was beneficially owned by the Fair Park Little League in the first instance. If, then, appellee is to show a right to have a declaratory judgment as to the ownership of the property, appellee must show that it has a right in the property. Appellee undertakes to show that right by averring that appellee is the original owner merely under a different name.

The bill avers: that on October 9, 1955, the association duly and properly approved a motion to affiliate with "Little Boys League, Inc.," and that a majority of the board of directors so voted on that occasion; that on "November 28, 1955, the members of the board of directors of Fair Park Little League voted unanimously to change the name of Fairpark Little League to Fairpark Little Boys League;" that on December 5, 1955, new officers were duly elected for the "Fair Park Little Boys League Association;" and that on March 6, 1956, "the name of the Association was changed to the 'Central Park Little Boys' league, at a duly called meeting of, and by the board of directors, so as to *accomodate* more boys of the community."

The averments of the bill appear sufficient to show the change of name and that appellee is the successor in interest of the original beneficial owner of the property in suit. The appellee did, however, attach to the bill exhibits purporting to be

copies of the minutes of the several meetings.

"It has been declared by this Court that an exhibit made the basis of a cause of action or defense and contradicting the averments of the pleading of which it is made a part will control such pleading. (Citations omitted.)" Tan-Kar Oil Co. v. Danley, 240 Ala. 205, 206, 198 So. 238, 239.

See also Lavretta v. First National Bank of Mobile, 235 Ala. 104, 178 So. 3; Hemphill v. Hunter-Benn & Co., 242 Ala. 61, 4 So. 2d 502; Goltsman v. American Life Ins. Co., 248 Ala. 151, 26 So.2d 596.

The minutes for the three dates last mentioned recite, respectively, as follows:

"Nov 28 1955

"A meeting of the Fair Park Little League Was Called To Determine Appropriate Steps For the Forthcoming Year 1956.

"Mr Bob McGraw And Mr M M McDonald And B R Williams Reported on a Meeting Held At the Tutwiler Hotel Between Members of the Little League of Alabama

"Mr Danny Jones Commissioner of the Newly Formed Little Boys Baseball Inc of North Charleston S C Was the Principle Speaker At the Meeting and Invited All Leagues In Alabama To Join the Little Boys League Mr Broad a *Representative* of Little League Also Spoke In Respect To Little Leagues Behalf

"After Reports By Mr McGraw McDonald and Williams the Members of the Board of Directors of Fair Park Little League Voted Unanimously to Change the Name of Fair Park Little League To Fair Park Little Boys League and To Franchise With Little Boys Baseball Inc In 1956

"Mr McDonald Pointed Out That If We Failed To Continue Little League In 1956 We Stood To Lose Our Baseball Park At Fair Park All Members Agreed To Investigate the Possibility of Building Another Ball Park In the Event We Lost the Field At Fair Park

"Mr Williams Read a Letter He Had Received From Carl Stotz Former Commissioner of Little League Inc Stating His Position In Little League and the Reasons For His Suit Against Little League

"Meeting Adjourned

"Members Present

"M M McDonald
"Bob McGraw
"Buck Williams
"O C Quinn
"H A Jerles
"Steve Capps
"John Keiser
"Neil Houston
"A D Tompkins
"Charlie Hall
"Gordon Eggert
"J B Neel"

"*Organizational Meeting Dec 5 1955*

"At the Central Park Community House Last Monday Night Dec 5 1955 Officers Were Selected For the New Fair Park Little Boys Baseball League

"Under This New Organization Boys Between the Ages of 8 and 12 Living In West End Central Park Fairfield Fairview Ensley Bush Hills Green Acres Powderly and Elyton Village Will Be Able To Participate In Organized Baseball At Fair Park This Will Give Boys Who Were Unable To Play Last Year Due To *Boundries* In Which They Lived And Opportunity To Play Under Experienced Supervision Plans Have Been Set Up For 6 Teams And With Enough Player Material Can Be Expanded To 8 Teams

"Officers Were Selected By a One Vote Per Member System Members Present Who Were Affiliated With the Fair Park Little League of 1955 Were Allowed To Vote

"Officers Selected Are As Follows
"President H Gordon Eggart
"Commissioner M M McDonald
"Sec & Treas J B Neel
"Field Mgr Steve Capps
"Managers Bob McGraw O C Quinn
 Charlie Hall Neil Houston

"Members of the Board of Directors

"Joe Simonetti Bob Fulton H A Jerles A D Tompkins

"Notices Will Be Placed In All Elementary Schools In This Area When and Where To Report For the First Practice In the Spring of 1956 Also Where Contracts May Be Obtained"

*"Minutes of Meeting Held March 6, 1956*

"The Meeting Was Held At Central Park Community House To Formulate Plan*d* For the 1956 Season McDonald Reported He Has Secured Use of the Field At Central Park Gramm*e*r School League Name Announced Originally As Fair Park Little Boys League Changed To Central Park Little Boys League The Vote To Change the Name Was Unanimous Since the State Fair Grounds Board of Directors Had Voted To Continue With Little League and Had So Notified Mr McDonald Through Their Voice Mr McIntosh

"After Discussion of Various Types of Fences It Was Decided To Build the Fence of Plywood Sections and Sell Ads To Be Painted on Each Section Price of Ads Would Range From 35 00 Up Mr Quinn Reported That We Could Buy Plywood For 186 88 Quinn Also Reported Boiler Pipe For the Backstop Could Be Purchased From Bermans At 35 Cents Per Foot Mr Quinn Was Authorized By the Board of Directors To Order the Pipe and Have It Delivered Friday After 3 PM

"Mr Capps Volunteered To Get the Backstop Fabricated Mr Houston Agreed To Contact Consolidated Dairies Regarding Sponsoring A Team Mr Hall Agree*t* To Contact Perfection Seat Cover Co About Sponsoring A Team Mr McGraw Agreed To Contact Flemming Transfer Co Regarding Another Sponsorship

"Mr McDonald Reported Only One Defin*a*te Sponsor So Far That Being Food Town West (Joe Simonetti) McGraw Appointed To Secure Names of Players From Old List of Contracts Also Requested To Draft League Schedule

"Mr Quinn Volunteered To Contact Printer About Printing Team Contracts And Posters To Be Displayed Throughout The Area Announcing Spring Training To Start March 17 Quinn Also To See If Some Sort Of Arrangements Can Be Made Regarding Concessions Stand

"Mr McDonald Requested All To Sell Advertising On Fence McDonald Agreed To See Stringfellow About Materials To Be Used In Building Press Box and Concession Stand Dugouts and Other Improvements Were Discussed Briefly Mr Quinn Reported He Had Contacted Rucker Hdwe Co About Wire For Backstop

"Meeting of All League Officials Set For 9 AM Saturday Morning At the Ball Field To Start Work on Diamond and Backstop

"McDonald Drafted Letter to be Mailed to the Parents

"Meeting Adjourned"

 "It is further established that on demurrer all pleadings are construed against the pleader, and, when susceptible of two reasonable constructions, the allegations of the bill, if equivocal, are construed most strongly against the pleader. (Citations omitted.)" Eisenberg v. Stein, 222 Ala. 576, 578, 133 So. 281, 282.

The case made by the exhibits is, as it appears to us, susceptible of two reasonable constructions, one favoring appellee and the other against it. The minutes dated November 28, 1955, commence with the recital: "A meeting of the Fair Park Little League was called * * *" etc., and further recites that the association name was changed to Fair Park Little Boys League.

The minutes for December 5, 1955, are entitled *"Organizational* Meeting * * *." The opening recital is that at a stated time and place, " * * * officers were selected for the *new* Fair Park Little Boys Baseball League" "Under this *new* organization boys between the ages * * * will be able to participate in organized baseball at Fair Park. This will give boys who were unable to play last year due to bound(a)ries in

which they lived and opportunity to play * * *. Officers were selected by a one vote per member system *Members present who were affiliated with the Fair Park Little League of 1955 were allowed to vote * * *."* (Emphasis supplied.)

A reasonable inference is that the December meeting was an *organizational meeting*, as the minutes say it was, for the formation of a *new* organization as the minutes describe it. Members "who were affiliated" with the predecessor association, Fair Park Little League of 1955, were allowed to vote. If the December meeting was the meeting of the old association and not the formation of a new one, what would cause the minutes to call it a new organization? What would be the occasion for reference to affiliation with the predecessor association if the two organizations are one and the same? A reasonable inference, at least, is that the two organizations were not one and the same.

The December minutes recite that officers were selected by a "one vote per member system." The constitution of Fair Park Little League recites that: "Officers shall be selected each year by majority vote of the members of the previous board of Directors." The December minutes show that officers were not elected as provided by the constitution. This also supports an inference that appellee was a new organization and not a successor to the original owner of the uniforms.

Construed most strongly against appellee, the bill of complaint fails to show by clear and unambiguous averments that appellee is the same association which originally owned the uniforms and, therefore, entitled to a declaration of rights respecting the beneficial ownership of the property in dispute.

The bill must clearly show the title and interest of the complainant in the subject matter of the suit and a present right to sue. Birmingham Trust National Bank v. Garth, 263 Ala. 121, 81 So.2d 590; An-

derson v. Byrd, 251 Ala. 257, 37 So.2d 115. The bill as last amended fails so to show such interest in complainant and the bill is without equity.

The decree overruling the demurrer is reversed and one is here rendered sustaining the demurrer to the bill. The cause is remanded and complainant is allowed thirty days after a copy of the decree of this court is received by the register of the court below to amend as it may be advised.

Reversed, rendered, and remanded.

LAWSON, SIMPSON, STAKELY, GOODWYN, and MERRILL, JJ., concur.