**In re Larry Eugene DARBY, Debtor.**

**E. Eugene DARBY and Larry Eugene Darby, Plaintiffs,**

v.

**Tom McGREGOR, Trustee, Defendant.**

**Bankruptcy No. 96–4048–APG.**

**Adversary No. 97–0303–APG.**

United States Bankruptcy Court, M.D. Alabama.

Oct. 19, 1998.

Joseph W. Warren, Capouano, Smith, Warren & Klinner, Montgomery, AL, for E. Eugene Darby.

Earl Gillian, Jr., Montgomery, AL, for Larry Darby.

Janie S. Gilliland, Memory & Gilliland, L.L.C., Montomgery, AL, for Trustee.

Susan Shirock DePaola, Montgomery, AL, Guardian ad litem.

Tom McGregor, Montgomery, AL, Trustee.

## OPINION

A. POPE GORDON, Bankruptcy Judge.

Plaintiff E. Eugene Darby, the debtor's father, filed a complaint to determine the extent of the interest of the bankruptcy estate in two prepaid college tuition contracts purchased for the debtor's minor children.[1]

The parties submitted the proceeding on briefs following trial on August 11, 1998.[2]

### FACTS

Eugene Darby, the debtor's father, purchased a series of United States Savings Bonds to fund the future college education of the debtor's two minor children, Danielle and Adrienne.[3] He put most in the name of the debtor Larry Darby.[4]

Later, Eugene investigated the Wallace–Folsom Prepaid College Tuition Trust Fund program[5] and decided to replace the savings bonds with PACT contracts for his grandchildren's college education.[6]

Eugene provided Larry with $5,038.00 to purchase a contract for Danielle. Eugene provided Larry with $2,000.00 in addition to the proceeds of the redeemed savings bonds to purchase a $5,188.00 contract for Adrienne.

Eugene agreed for Larry to purchase the PACT contracts for the children in his own name. Eugene testified credibly that, because of his age, it was "much easier" to let Larry purchase the contracts. Eugene also knew he would be of advanced age when the time came for the children to make actual draws under the contracts.[7]

A purchaser may cancel a PACT contract at any time and receive a refund of the purchase price minus administrative costs. The redemption value of the instant contracts is almost $10,000.00.

Larry filed a chapter 7 petition on September 12, 1996. Larry claimed the redemption value of the contracts exempt from the bank-

1. Debtor Larry Darby, initially a defendant, was realigned as a plaintiff. The interests of the minor children in this proceeding are represented by a court-appointed guardian ad litem.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E). These findings of fact and conclusions of law are made pursuant to Fed.R.Bankr.P. 7052.

3. Eugene's wife and mother provided a portion of the funds to purchase the bonds.

4. The bonds were purchased beginning in 1990 through December 1992 in the names of the debtor, the debtor's former wife, and a few in the names of the minor children.

5. The trust fund is an instrumentality of the State of Alabama. The trust fund is designed to assist payment of tuition costs by allowing a person to purchase in advance prepaid tuition contracts. A contract obligates the trust fund to pay tuition in full if the minor child attends a state college or university. See Ala Code § 16–33C–1 (1975) which describes in detail the legislative intent of the act. The purchase price of the contracts is determined actuarially. Payments received from purchasers become public funds which the state invests to generate assets to fund the education. See Ala Code 16–33C–6(c) and (d) (1975).

6. PACT is an acronym for Prepaid Affordable College Tuition.

7. Larry's duties under the contracts did not cease with the purchase. Among other duties, Larry will be responsible for filing claims for tuition with supporting information each academic period.

ruptcy estate. Upon objection by the chapter 7 trustee, the exemption was disallowed.[8]

The chapter 7 trustee filed a motion to require the treasurer of the State of Alabama to turn over the redemption value of the contracts.

Eugene then filed this adversary proceeding contending that the bankruptcy estate holds the contracts in trust for the minor children because the contracts were purchased with funds delivered in trust to Larry. The guardian ad litem agrees.

## CREATION OF THE TRUST

■ A trust is a "fiduciary relationship with respect to property, arising as a result of a manifestation of an intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of ... one or more persons, at least one of whom is not the sole trustee." RESTATEMENT (THIRD) OF TRUSTS § 2 (1996).

■ A trust involves the following three elements:

(1) a trustee, who holds the trust property and is subject to duties to deal with it for the benefit of one or more others; (2) one or more beneficiaries, to whom and for whose benefit the trustee owes the duties with respect to the trust property; and (3) trust property, which is held by the trustee for the beneficiaries.

RESTATEMENT (THIRD) OF TRUSTS, § 2, Comment f (1996).

■ In the instant case, Eugene created a trust for the express purpose of funding the future college education of the minor children.

All three elements of a trust are present: (1) Larry, the debtor, is the trustee of the educational trust and holds title to the trust property (the PACT contracts); (2) Larry owes duties to the beneficiaries (the minor children) to deal with the trust property for their benefit;[9] and (3) the trust property consists of the PACT contracts purchased with proceeds of the redeemed savings bonds (former trust property) and additional cash provided by Eugene.

■ It is well settled that Alabama law recognizes express[10] oral trusts in personal property.[11] *Gordon v. Central Park Little Boys League,* 270 Ala. 311, 119 So.2d 23 (1960).[12]

The chapter 7 trustee concedes as much but questions whether Eugene, a nonprofessional, had sufficient knowledge and ability to create a trust. Darby admitted on cross examination that he did not understand the legal meaning of the word "trust" at the time he transferred the money to his son.

■ However, such is not fatal to the creation of a trust:

An express trust may be created even though the parties do not call it a trust, and even though they do not understand precisely what a trust is; it is sufficient if what they appear to have in mind is in its essentials what the courts mean when they speak of a trust.

*Houston v. Capps (In re Capps),* 193 B.R. 955, 961 (Bankr.N.D.Ala.1995) (citation omitted).

## THE TRUST AND BANKRUPTCY

■ At the commencement of the bankruptcy case, Larry held legal title to the PACT contracts in trust for the minor children; the minor children as beneficiaries

---

8. *See In re Darby,* 212 B.R. 382 (Bankr.M.D.Ala. 1997).

9. *See supra* note 7.

10. The term "express trust" or similar phrase is used in this opinion "to emphasize the contrast between such a trust on the one hand and a resulting trust or a constructive trust on the other." *See* RESTATEMENT (THIRD) OF TRUSTS § 2 (1996).

11. State law determines the extent and validity of a debtor's interest in property. *T & B Scottdale Contractors, Inc. v. United States,* 866 F.2d 1372, 1376 (11th Cir.1989).

12. Alabama law requires trusts involving real property to be in writing. ALA.CODE § 35–4–255 (1975). However, Alabama law does not similarly require oral trusts of personalty to be in writing. *City Bank & Trust Co. v. Gardner,* 225 Ala. 136, 142 So. 535 (1932).

owned the equitable interest.[13] Larry's legal title became property of the chapter 7 bankruptcy estate under 11 U.S.C. § 541(a)(1).

However, the equitable interest owned by the children did not become property of the estate. 11 U.S.C. § 541(d) clarifies § 541(a)(1) by expressly providing that property in which Larry holds only legal title becomes property of the estate "only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 5 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 541.26, at 541–79 (15th ed. rev.1998).

The question arises whether the equitable interest of the children is nevertheless subject to the rights and powers of the chapter 7 trustee under 11 U.S.C. § 544.[14]

 Under 11 U.S.C. § 544(a)(1) the chapter 7 trustee has, as of the commencement of the case, the status of a creditor with a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien.[15] One court stated as follows:

> [Section] 544(a) arms the trustee at the time of the filing of the debtor's bankruptcy petition with all the rights and powers of various creditors and transferees of the debtor so as to avoid incomplete or improperly perfected transfers of the debtor and thereby insure an equality of distribution among the debtor's general unsecured creditors.

City Nat'l Bank v. General Coffee Corp. (In re General Coffee Corp.), 828 F.2d 699, 705 (11th Cir.1987) (quoting McAllester v. Aldridge (In re Anderson), 30 B.R. 995, 1009 (M.D.Tenn.1983)).[16] The rights of the trustee as a hypothetical judicial lien creditor are determined by state law. 5 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 544.05, at 544–9 (15th ed. rev.1998).

 Under Alabama law, a hypothetical judicial lien creditor would not prevail over the interests of the minor children in the PACT contracts. See Sloss v. Glaze, 231 Ala. 234, 164 So. 51 (Ala.1935); Gladden v. Columbiana Sav. Bank, 29 Ala.App. 97, 193 So. 185 (Ala.Ct.App.1939); First Nat'l Bank v. T.J. Perry & Son, 25 Ala.App. 6, 140 So. 614 (Ala.Ct.App.1931). "An express trust beneficiary clearly has priority to trust assets over a judicial lienholder or execution creditor." City Nat'l Bank, 828 F.2d at 706 (applying Florida law).[17]

Therefore, the equitable interests of the children in the PACT accounts are not subject to the rights and powers of the chapter 7 trustee under 11 U.S.C. § 544(a).

Separate judgment will enter for the plaintiffs.

---

**13.** "The interest of a beneficiary under a trust is considered equitable as contrasted with the interest of the trustee which is a legal interest because the trustee has legal as contrasted with equitable title." BLACK'S LAW DICTIONARY 539 (6th ed.1990) (defining equitable interest).

**14.** The chapter 7 trustee's naked legal title without the equitable interest is of no value to the bankruptcy estate.

**15.** Some courts have detected a potential for tension between § 541(d) and § 544(a)(1) because property excluded from the estate under § 541(d) may be brought into the estate by the trustee under § 544(a). City Nat'l Bank v. General Coffee Corp. (In re General Coffee Corp.), 828 F.2d 699 (11th Cir.1987); Mullins v. Paul J. Paradise & Assocs., Inc. (In re Paul J. Paradise & Assocs., Inc.), 217 B.R. 452 (Bankr.D.Del.1997).

However, it is unnecessary to resolve any perceived tension between the two sections under the facts of this case: under either section, the trust property does not come into the estate.

**16.** 11 U.S.C. § 544(a), inter alia, empowers the trustee to avoid certain transfers of property of the debtor. In the case sub judice, however, the question of a transfer of the debtor's property (such as by giving a security interest) does not arise. The debtor's interest in the trust property as trustee remained the same ab initio, even though the debtor changed the form of the trust property from money and bonds to PACT contracts.

**17.** In City Nat'l Bank, the court accorded the beneficiary of a constructive trust of personal property with the same priority as a beneficiary of an express trust of personal property.