## AERODYNE SYSTEMS ENGINEERING, LTD.

v.

## HERITAGE INTERNATIONAL BANK.

### Civ. A. No. N–86–1302.

United States District Court,
D. Maryland.

April 3, 1987.

David J. Ontell, Washington, D.C., and Beverly G. Stone, Greenbelt, Md., for plaintiff.

Harlan L. Weiss, Thomas C. Junker, and Sachs, Greenebaum & Teyler, Chevy Chase, Md., for defendant.

### MEMORANDUM

NORTHROP, Senior District Judge.

Defendant, Heritage International Bank ("Heritage") has moved this Court pursu-

ant to Fed.R.Civ.P. 37(b) and (d) and 41(b), for an order dismissing this action and imposing sanctions on the grounds that plaintiff, Aerodyne Systems Engineering, Ltd. ("Aerodyne"), has repeatedly failed to comply with defendant's discovery requests and this Court's Orders compelling said discovery. A hearing was held on December 17, 1986, at which time this Court stated that it would grant defendant's motion unless plaintiff fully complied with all outstanding discovery requests on or before January 1, 1987. Thereafter, on January 9, 1987, defendant renewed its motion to dismiss on the grounds that plaintiff has failed to obey the Court's previous Orders compelling discovery, including, but not limited to, the Court's Order of December 17, 1986. For the reasons set forth below, the Court will grant defendant's motion to dismiss and impose appropriate sanctions against the plaintiff.

### I.

#### A. *History of the Case*

For maximum understanding of the compelling reasons motivating and indeed necessitating the Court's disposition in this matter, a detailed chronicle of the events preceding this motion is essential. Examining the totality of facts herein presented, the imposition of the sanction of dismissal pursuant to Rule 37(b)(2)(C), as well as Rule 41(b), is entirely appropriate and justified under the circumstances. None of the facts set forth below are in dispute.

The genesis of this litigation dates back to April 24, 1986, when Aerodyne, a corporation in the business of designing, manufacturing and selling radio controlled aircraft, filed a complaint in this Court alleging breach of contract and interference with prospective advantage against Heritage, a commercial bank, after Heritage refused to issue Aerodyne a letter of credit.

Heritage served, by mail, interrogatories and request for production of documents on Aerodyne on July 1, 1986. In accordance with Fed.R.Civ.P. 33(a),[1] Aerodyne's answers to the interrogatories or objections thereto should have been provided by August 4, 1986. There was neither the timely submission of any responses or objections nor did Aerodyne request an extension of time so that its legal position would be adequately safeguarded.

Aerodyne's responses to the request for production of documents was due on August 5, 1986, with the production scheduled for 10:00 a.m., in Heritage's counsel's Maryland office. Aerodyne's counsel did not appear at the scheduled time, and defendant's counsel, Thomas C. Junker, called plaintiff's counsel, Mr. David Ontell, at 10:30 a.m., and was told that Aerodyne was preparing its answers to the interrogatories and its responses to the request for production of documents, and that Aerodyne hoped to have those responses to Heritage by the end of that week, August 9, 1986, or else counsel would call with a request for an extension of time. This conversation was confirmed in a letter to Mr. Ontell dated August 5, 1986. (Defendant's Exh. 1).

Aerodyne, neither served its discovery responses nor sought an extension of time by August 9, 1986, and failed to contact counsel for Heritage during the remainder of August, 1986. Counsel for Heritage, Mr. Junker, called Mr. Ontell on September 2, 1986, who stated that he had been in the

---

**1.** Rule 33 of the Federal Rules of Civil Procedure states in relevant part:

Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them. The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories, except that a defendant may serve answers or objections within 45 days after service of the summons and complaint upon the defendant. The court may allow a shorter or longer time. The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory.

office typing the discovery responses (over the Labor Day weekend), and that those responses would be received by defendant by September 5, 1986. (Defendant's Exh. 2). Heritage did not receive Aerodyne's discovery responses and filed its first motion to impose sanctions on September 12, 1986, pursuant to Rule 37(d).

On September 22, 1986, counsel for the parties appeared at the status conference in this matter, and counsel for Heritage informed this Court[2] that Aerodyne had still failed to provided discovery responses. Mr. Ontell stated that discovery responses were in draft form and that Heritage should expect the finished version that week. Thereafter, on October 1, 1986, counsel for Heritage wrote to Magistrate Klein[3] to inform the Court that Mr. Ontell, contrary to his representations at the status conference, had still failed to provide Aerodyne's discovery responses. (Defendant's Exh. 3).

On October 7, 1986, this Court issued a letter informing counsel that unless Aerodyne filed its responses to Heritage's discovery requests by October 14, 1986, defendant's motions for sanctions would be granted. (Defendant's Exh. 4). Heritage received Aerodyne's answers to Heritage's interrogatories, with a certificate of service of October 14, 1986: Heritage, however, did not receive Aerodyne's response to its request for production of documents. Counsel for Heritage wrote to this Court on October 22, 1986, stating that it had not received Aerodyne's responses to Heritage's document request. (Defendant's Exh. 5). The following day Mr. Ontell called defendant's counsel, Harlan L. Weiss, and informed him that he sent Aerodyne's document responses in a separate envelope the same day he mailed Aerodyne's interrogatories (i.e. October 14, 1986), and said that he would immediately mail another copy to defendant's counsel. That same day, defense counsel wrote to Mr. Ontell, pursuant to Local Rule 34, advising him in detail of the defective nature of Aerodyne's answers to interrogatories and requesting responsive answers no later than October 29, 1986. (Defendant's Exh. 6).

On October 28, 1986, this Court issued an Order requiring that plaintiff *immediately* respond to Heritage's request for production of documents and imposing monetary sanctions on Aerodyne for its unexcusable delay in complying with defendant's discovery request. On November 3, 1986, Heritage filed a second motion for sanctions based on plaintiff's failure to provide responsive answers to defendant's interrogatories or to comply with this Court's letter ruling of October 7, 1986. Aerodyne never filed any type of objection, with this Court, relating to Heritage's request for responsive interrogatories.

Not having received Aerodyne's response to Heritage's request for production of documents, despite this Court's letter ruling of October 7, 1986 and its Order of October 28, 1986, and despite plaintiff's promise on October 23, 1986, to mail "another" copy of its document responses, Heritage filed, on November 7, 1986, its initial motion to dismiss the complaint. Both the second motion to impose sanctions (which includes a request for the dismissal of the case pursuant to Rule 37(b) and (d)) and the motion to dismiss were subsequently opposed by Aerodyne on November 17 and 24, 1986, respectively. In Aerodyne's opposition to the motion to dismiss, plaintiff asserts that its responses to the request for production of documents, supplemental responses to the document request and supplemental answers to interrogatories would be served on Heritage that same day. This representation was not complied with by Aerodyne. Rather, the supplemental responses to the document requests were not received by Heritage until December 2, 1986, and the supplemental answers to interrogatories were not received until December 5, 1986. On December 5, 1986, Heritage filed its

2. The status conference was conducted by the staff of this Court.

3. Magistrate Klein was initially requested to oversee the status conference and to resolve the discovery dispute.

reply to plaintiff's opposition to the motion to dismiss asserting continued untimeliness by Aerodyne, continued unresponsive answers to the interrogatories and document requests, and continued misrepresentations by Aerodyne to Heritage and this Court regarding its conduct during discovery.

The Court held a hearing on December 17, 1986, on Heritage's motion to dismiss during which the Court ruled that this action would be dismissed unless plaintiff, on or before January 1, 1987, provided full and complete responses to Heritage's interrogatories and request for production of documents served July 1, 1986. This Court further ruled that, to the extent the deficiencies in plaintiff's previous discovery responses were not sufficiently clear, Heritage should deliver to Aerodyne by December 22, 1986, a further description of the deficiencies in Aerodyne's answers to interrogatories and responses to request for production of documents. In compliance with this Order, Heritage hand-delivered to each counsel of record for Aerodyne a 23 page itemization of the deficiencies, in which Heritage spelled out, in great detail, the deficiencies in Aerodyne's discovery responses.

However, despite the clear directives of this Court at the close of the December 17, 1986, hearing, Aerodyne did not deliver its second supplemental responses to the defendant's document request until Monday, January 5, 1986 and to the extent that its second supplemental answers to interrogatories, filed on January 2, 1987,[4] relied on the documents filed on January 5, 1987, these answers were untimely as well.

On January 9, 1987, Heritage renewed its motion to dismiss for plaintiff's failure to comply with this Court's previous Orders and for its continuing failure to provide adequate and unevasive discovery responses. Aerodyne has responded to Heritage's renewed motion asserting that all discovery requests have been complied with fully.

### B. *Continuing Deficiencies in the Responses to Discovery Requests*

The record in this case is replete with examples of Aerodyne's continued evasiveness in response to Heritage's discovery requests. For example, but not by way of limitation, the following is a description of the more egregious examples of plaintiff's failure to completely and adequately respond to Heritage's discovery requests as ordered by this Court at the December 17, 1896, hearing:

(1) Heritage, requested in its request for production of documents, number 18, that Aerodyne furnish copies of all shareholder agreements, annual reports, and minutes of all shareholder and/or directors meetings, both annual and special from the date of incorporation of Aerodyne to date.

· Aerodyne's second supplemental answer to request Number 18 indicates that it supplied some, *but not all,* of the requested corporate documents and minutes, by stating that "plaintiff's counsel requested all minutes existing from Bruce Caputo, Corporate Secretary; those documents were available. Plaintiff is searching for all other records of this type including annual reports, *and will supplement its response when these are located."* Aerodyne, in its previous supplemental answers stated that these corporate documents and minutes would be produced and during the December 17, 1986, hearing, plaintiff's counsel stated that Mr. Caputo was, at that time, on his way from New York to deliver the documents.[5] Despite the continued promises and representations of Aerodyne, all of these documents still have not been produced. Furthermore, the promise to continue to search for records and supplement its responses in the future, is a completely

---

**4.** Aerodyne delivered its second supplemental answers to interrogatories on January 2, 1986, which defendant's counsel, on December 31, 1986, agreed would be sufficiently timely, because defendant's counsel's offices would be closed on January 1, 1987.

**5.** Plaintiff stated in its December 1, 1986 supplemental answer to request number 18: "But will furnish pertinent minutes within the next week."

inadequate response to a long standing discovery request, which this Court rejected in no uncertain terms at the December 17th hearing, when it informed plaintiff's counsel that continued promises for future performances were an unacceptable substitute for present compliance, and that responsive production must be made by January 1, 1987.

(2) Heritage requested, in interrogatory number 22, that Aerodyne identify the expert witness it intends to call at trial and set forth "(i) the subject matter on which the expert is expected to testify; (ii) the substance of the facts and opinions to which the expert is expected to testify; and (iii) a summary of the grounds on which the expert is expected to testify." The scope and nature of this request is entirely consistent with Rule 26(4)(A). Plaintiff, while identifying its expert witnesses and the general subject matter of their testimony, has completely failed to provide both their actual opinions and the grounds for their opinions, which information is clearly relevant and proper and was plainly sought by the interrogatory and Heritage's December 22, 1986, itemization sent to Aerodyne's counsel. For example, plaintiff, in referring to William Allen, a proposed expert on title insurance of aircraft, states that he will testify "on the state of the title to the aircraft in question that were to be security for the letter of credit that the defendant would issue; further, he ... will set forth as grounds on which he reached his conclusion about the state of title of the aircraft in this case, explaining how the title to the aircraft is regulated, and how and why aircraft can serve to secure loans, despite their mobility." This kind of general form language pervades Aerodyne's answers to interrogatories and is unacceptable.

In its opposition to the renewed motion to dismiss, Aerodyne defends the brevity of its answer by stating:

Again, we have given them all of what we have on the issue of experts. We have not reviewed with them just what their testimony will be and the details of their opinions. We were asked who we intend to call, presumably on the day of the response to the question. The actual opinions are their own not Aerodyne's. We identified William Orr and Larry D. Johnson, and an appropriate representative from the title company, because William Allen no longer works for them, and we don know where he is. All of these experts are not in the employ or under the control of Aerodyne. While we will need them at trial we do not control them. We intend to call them in their expert capacity to testify on matters about which we expect them to tell the truth. Other than in reports in the hands of the defendants we know no more of their opinions than were state in our brief answer.

Aerodyne plainly admits that it has made no effort to contact its expert witnesses and answer the interrogatory. It simply attempts to shift its responsibility of complying with this discovery request by claiming it does not control or employ the experts, which is irrelevant, and by alluding to reports presumably in the "hands" of Heritage, the relevancy of which is not explained. Aerodyne's position that it has fully satisfied its obligation to answer interrogatory number 18 is completely indefensible.

(3) Plaintiff has failed to describe, exactly and in detail, as requested by Heritage's interrogatory number 16, the assets and liabilities of James Salano, President of Aerodyne, who, as a condition to receiving a letter of credit from Heritage, was required to personally guarantee the loan. Instead, Aerodyne has, answering with typical generalities, stated that "in February 1985, he [Salono] owned no real estate or expensive personal property; at that time, and both before and after, plaintiff has borne all business related expenses, travel and the like, where Mr. Solano's participation was deemed necessary. Mr. Solano maintained a joint checking account with his wife, the balance never exceeding $100. Liabilities in February, 1985, consisted of loans from shareholders John Zorack and Bruce Caputo, in the amount of $15,000.

Further liability in the amount of approximately $14,500 is owed to others." [6]

(4) While Aerodyne has given the names, addresses and phone numbers of the officers and shareholders of Aerodyne, as requested, Aerodyne still has failed to give that information concerning five members of Aerodyne's Board of Directors; Mordachai Hod, George Geminett, Abe Liebowitz, William Mead, and Charles Warren, despite this Court's Orders, and Aerodyne's own representation in its December 4, 1986, supplemental answer to interrogatory number 14 that: "Plaintiff will furnish a complete list of addresses and telephone numbers for all persons mentioned here [including Hod, Geminett, Liebowitz, Mead and Warren]."

(5) In its complaint at paragraphs 12, 13 and 15, Aerodyne claims that its failure to receive a letter of credit from Heritage resulted in its failure to purchase the assets of Texas Helicopter International Corporation, a loss of other business opportunities and damage to Aerodyne's business reputation. Heritage, through its interrogatory numbers 9, 10 and 11 and request for production of documents numbers 9, 11, 12 and 13, requested a detailed explanation of exactly how and to what extent Aerodyne's business reputation was injured, a description of the "other business opportunities" and a description of any and all items of damage. What Heritage has received in response to its discovery requests is a series of answers that are so confusing that they border on incomprehensible and are contradictory in nature.

For example, Aerodyne stated in its initial answers to interrogatory number 9, which request the facts supporting the damage claim in paragraph 12 of the complaint, as follows:

Since the bank was "dragging its feet" and the bank knew Aerodyne had possession of the assets and that Aerodyne had by now invested additional money to build the full prototype to go to the Paris Air Show, [G]ifton McCreary wanted Aerodyne to put pressure on the bank to deliver the letter of credit. Also Aerodyne was pressured to assign a consent judgment for the full amount due by May 20, 1985, this date also was relayed to the bank and then also issued a letter that all data should be ready by May 20. [sic] 1985.

In initially responding to a request for the facts supporting its damage claim in paragraph 15 of the complaint, particularly with reference to "other business opportunities," Aerodyne stated:

Aerodyne was now put in difficulty and could not deliver or supply parts to its customers, or obtain further clients through the Paris Air show. Aerodyne had been involved in lawsuits from May 1985 to February 1986, in order to sell through its advertisements and sales people. Aerodyne now lost its credit ability and sale due to the failure to supply parts or build new helicopters.

Not only were those responses untimely, they were incomprehensible and lacking any meaningful specificity. Understandably, Heritage sought supplementation resulting in Aerodyne's December 4, 1986 supplemental answer to interrogatory number 9 in which it stated "As a result of the failure to issue the letter of credit, plaintiff lost an opportunity to purchase helicopter parts which could be sold for several times what plaintiff was to pay for them. Exact calculation of the worth of the parts will be lengthy (sic), involving going over a long

6. Furthermore, Aerodyne was asked to provide the income tax returns of the company during its three-year corporate existence. This information might have helped paint a clearer picture of the financial status of the company and its principal officer which may be at issue in this case. However, Aerodyne has made the startling admission that plaintiff has never filed an income tax return for the years requested nor sought extensions to file. (See Aerodyne's

second supplemental answers to interrogatory number 17 and second supplemental answer to request for production of documents number 15). Aerodyne did allude to financial reports in the hands of two of its accountants several times in its discovery responses but failed to provide any of this information to Heritage. (See Aerodyne's second supplemental answer to request for production of documents numbers 1, 13 and 15).

list of parts and evaluating the resale value of each one. *Plaintiff will do this, and further supplement."* (emphasis added). In its second supplemental answer to interrogatories numbers 9 and 11, it is clear that Aerodyne has made no meaningful attempt to prepare the promised breakdown of the parts. Rather, Aerodyne makes reference to two confusing inventories its supplied, pursuant to the document request, giving little or no indication of what parts listed in those inventories are relevant to the pending litigation. Rule 33 permits a party to answer an interrogatory by referring to documents only where the burden of ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served and where reference to the documents in the interrogatory is in usch detail that the interrogating party can readily ascertain the answer.[7] Here, clearly the burden of ascertaining the parts and their cost alleged to be part of the damages was disparate, with knowledge of the information being in the control of Aerodyne. Furthermore, Aerodyne made no effort to specify what parts, listed in the inventories provided, were to be included in the damage claim. Nor did Aerodyne make any real attempt to plainly describe the alleged "financial damage" to Aerodyne concerning its inability to resell those parts, but rather states that "acquisition of Texas helicopter would have enable plaintiff to sell at a large profit the parts and two helicopter [sic]" and "[p]laintiff would have profited handsomely from the purchase of the assets of Texas Helicopter."

Lastly, Aerodyne initially claimed that its participation in the Paris Air Show of 1985 was an element of its damages. In its second supplemental answers to interrogatory number 9, Aerodyne reconsiders and states that it will not consider participation in the Paris Air show as an item of damage in connection with this lawsuit. Incredibly, and in direct contradiction to its second supplemental answer to interrogatory number 9, Aerodyne states, in its second supplemental answer to interrogatory number 11, that its damages do include "the cost of shipment of the two helicopters of the 1985 Paris Air show, costing nearly $35,000 [which] was incurred because of the assurances that the letter of credit would issue."[8]

## II.

### A. *Rule 41(b)*

Heritage contends that Aerodyne has flouted the Federal Rules of Civil Procedure and the Orders of this Court thereby evading its discovery responsibilities over a period of time of more than six months. Accordingly, Heritage argues that Aerodyne's complaint should be dismissed under Fed.R.Civ.P. 41(b). Rule 41(b) provides in relevant part:

> For failure of the plaintiff to prosecute or to comply with these rules or any orders of court, a defendant may move for dismissal of an action or of any claim against him.

In the instant case, dismissal of plaintiff's complaint can be based, under Rule 41(b), on two grounds: failure to comply

---

7. Fed.R.Civ.P. 33(c) provides:
   (c) Option to Produce Business Records. Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party

serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

8. Additionally, Aerodyne states, in its opposition to the renewed motion to dismiss, that damages include participation in the Paris Air show of 1985, despite its second supplemental answer to interrogatory number 9 to the contrary.

with the Federal Rules of Civil Procedure and failure to comply with the Orders of this Court.

As the Fourth Circuit has cautioned, "a dismissal with prejudice is a harsh sanction which should not be invoked lightly in view of 'the sound public policy of deciding cases on the merits.'" *Davis v. Williams*, 588 F.2d 69, 70, (4th Cir.1978), *quoting Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974).

> Against this policy, the district court must balance considerations of sound judicial administration, applying four criteria: (1) the degree of personal responsibility on the part of the plaintiff' (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a " 'drawn out history' of 'deliberately proceeding in a dilatory fashion;' " and (4) the effectiveness of sanctions less drastic than dismissal, *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir.1976).

*Davis* at 70.

■ Applying these four factors to this case, this Court holds that the conduct of Aerodyne and Aerodyne's counsel is sufficiently egregious to warrant dismissal of the complaint with prejudice. In the first place, Aerodyne is not blameless. Aerodyne's counsel freely admits that the delays in proceeding with discovery in this case is due in part to Aerodyne's preoccupation with bidding on government contracts. (*See* Plaintiff's opposition to Defendant's Motion to Dismiss filed November 24, 1986). It is clear, then, that Aerodyne, itself, has personal involvement in the events obstructing timely and complete discovery responses. The fact that Aerodyne may be only partly responsible for the delay does not absolve it from facing the consequence that its case may be dismissed. In *Davis*, 588 F.2d 69, the Fourth Circuit affirmed the decision of Judge Young of this Court, dismissing with prejudice a case in which the plaintiff had engaged in obstructive behavior, although plaintiff's attorney was responsible for some of the delay.

There is no doubt that Aerodyne's delinquent and inadequate interrogatories and document responses have resulted in prejudice to Heritage by preventing it from conducting discovery, evaluating the merits of the claims against it, and from adequately preparing its defense to this matter. Furthermore, Heritage has been put to considerable additional time and expense of preparing several motions to compel discovery.

In addition, the record amply supports a finding that there is a long history of delay. This case was initiated by Aerodyne on April 24, 1986. Heritage served the discovery requests, at issue here, back on July 1, 1986. Yet, despite numerous letters and telephone calls from Heritage to Aerodyne's counsel seeking resolution of the discovery delays, continuing but unfilled promises by Aerodyne, and three Court Orders, all occurring over a six month period, Aerodyne's final discovery responses were untimely and inadequate. In its final Order at the December 17, 1986 hearing, the Court specifically directed Aerodyne to supply complete discovery response to Heritage no later than January 1, 1987, and warned that the case would be dismissed for noncompliance. Aerodyne flouted this Order by filing its document responses five days late. Moreover, as outlined previously, many of the discovery responses continue to be inadequate, failing to provide Heritage with requested information concerning the opinions of Aerodyne's expert witness, the corporation's business records, the precise basis for damage claims as well as other crucial information. While it is true that the "courts must, and do, stand ready to hear complaints properly filed within the court's jurisdiction", *Dabney v. Burrell*, 67 F.R.D. 132, 133 (D.Md.1975), the dismissal power of the district court is appropriate where there is a "clear record of delay or contumacious conduct by the plaintiff." *Dove v. Codesco*, 569 F.2d 807 (9th Cir.1978). In the face of the record here, the Court cannot help but find that Aerodyne has engaged in a lengthy pattern of intentional delay.

This Court is unconvinced that less drastic sanctions would be effective. Indeed, the Court has already attempted this alternative by fining Aerodyne in an Order dated October 28, 1986, for its unexcusable delays in complying with the rules governing discovery. Aerodyne's subsequent obstructive conduct reveals the ineffectiveness of such a sanction. Furthermore, this Court repeatedly gave Aerodyne an opportunity to provide Heritage the discovery responses it is entitled to receive. Judge Butzner observed in *Davis* that "the United States District Court in Maryland has a crowded docket. Appropriate sanctions must be available to prevent its work from being impeded by the type of conduct disclosed by this record." *Davis*, 588 F.2d at 71. In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976), the Supreme Court stated:

> [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such sanction, but to deter those who might be tempted to such conduct in the absence of such deterrent.

For the reasons set forth above in this opinion, this Court concludes that justice dictates dismissal with prejudice of the within case under Rule 41(b).

### B. *Rule 37(b)(2) and (d)*

Federal Rule of Civil Procedure 37(b)(2) and (d) provides for sanctions against parties or persons unjustifiably resisting discovery by stating in relevant part:

> (b) Failure to Comply with Order (2) Sanctions by Court in which Action is Pending. If a party or an officer, director, or managing agent of a party ... fails to obey an Order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> .  .  .  .  .

> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the Order is obeyed, or dismissing the action or proceeding or any party thereof, or rendering a judgment by default against the disobedient party;
>
> .  .  .  .  .

> (d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection. If a party or an officer, director, or managing agent of a party ... fails ... (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending may make such orders in regard to the failure as are just, and among others, it may take action authorized under paragraphs ... C of subdivision (b)(2) of this rule.
>
> .  .  .  .  .

> The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).

Both subdivision (b) and (d) of Rule 37 authorize the Court to require the party and/or his counsel to pay reasonable expenses, including attorney's fees caused by the failure to comply with the discovery rules or orders of the court regarding discovery, unless the court finds the failure was substantially justified or that other circumstances make an award of expenses unjust.

In this case, Aerodyne has failed for over six months to respond adequately and in a timely fashion to Heritage's interrogatories and request for production of documents served July 1, 1986. Aerodyne has forced Heritage to file four motions to compel discovery and/or dismiss the complaint, and, most significantly, has failed to obey the Court's letter ruling of October 7, 1986,

compelling discovery, the Court's Order of October 28, 1986, compelling Aerodyne to "immediately respond to defendant's request for documents", and the Court's oral ruling of December 17, 1986, requiring complete and responsive answers to discovery to be delivered to Heritage no later than January 1, 1987. At no time did Aerodyne seek an extension of time within which to comply with the discovery rules or Orders of this Court, nor did it seek a protective order regarding the discovery requests. Rather, Aerodyne continued to obstruct discovery by failing to comply with the rules of discovery and this Court's Orders despite continuing representations to Heritage and this Court that such compliance would be undertaken. Such conduct provides firm ground for dismissing this case under Rule 37(b)(2) and (d).

■ The power to dismiss a case under Rule 37 is discretionary with the trial court and will be disturbed on appeal only for abuse of discretion. *National Hockey League*, 427 U.S. 639, 649, 96 S.Ct. 2778, 2780; *Snead v. Automation Industries, Inc.*, 102 F.R.D. 823, 829 (D.Md.1984); *Independent Investor Protective League v. Touche Ross*, 607 F.2d 530 (2d Cir.1978); *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 505 (4th Cir.1977). Courts are, however, reluctant to dismiss a case unless there has been some showing of a wilful or bad faith default. *Snead*, 102 F.R.D. at 829; *Wilson*, 561 F.2d at 503. In *Snead*, Judge Kaufman, of this Court, identified the four factors, as indicated by the Fourth Circuit in *Wilson*, to be considered in imposing a sanction of dismissal under Rule 37:

(1) the needs of the discovery party;
(2) the nature of the non-compliance;
(3) "how the absence of such evidence [not produced] would impair [the other party's] ability to establish their case";
(4) whether the non-compliance party's conduct would deprive the other party of a fair trial.

*Snead*, 102 F.R.D. at 829; *Wilson*, 561 F.2d at 505. The Supreme Court, as well as lower courts, have held that Rule 37 dismissal with prejudice is appropriate when a party has engaged in a willful or deliberate bad faith default. *Societe Internationale v. Rodgers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–1096, 2 L.Ed.2d 1255 (1958); *Anderson v. The Home Insurance Company*, 724 F.2d 82, 84 (8th Cir.1983); *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1208 (8th Cir.1983). *Lorin* suggests that deliberateness includes failure to respond to discovery requests on time, even with extensions, and failure to provide all information after a court order.

■ In the pending case, Aerodyne's conduct can only be deemed deliberate. It is evident from the record that Aerodyne repeatedly failed to respond to discovery requests on time, within the dictates of the discovery rules, or timely serve it responses to Heritage after Heritage agreed, voluntarily and informally, to accept the responses at later dates. Moreover, Aerodyne has obdurately refused to comply with three of this Court's Orders to timely and adequately respond to Heritage's discovery requests despite this Court's warnings that the consequence of such non-compliance would be dismissal. Furthermore, Aerodyne has tendered no satisfactory reason why its discovery responses were not timely or complete other than to assert that it was busy tending to other matters relating to bidding on government contracts. Aerodyne's position, in its opposition to Heritage's renewed motion to dismiss, that its second supplemental discovery responses are complete is without merit in light of the deficiencies, and Aerodyne's own admission that certain responses were in need of further supplementation. And, despite Aerodyne's assertion to the contrary, Heritage has been prejudiced and runs the risk of being surprised at trial due to the incompleteness of Aerodyne's discovery response. At this point, Heritage cannot be sure of exactly what items, expenses, or loss of business opportunities Aerodyne intends to include in its damage claim or what opinions Aerodyne's expert witnesses intend to state. Heritage has been further prejudiced by the fact that it has been put

to substantial expense in seeking discovery and has faced substantial delay in proceeding with this litigation. The Court must and does conclude that the conduct of Aerodyne demonstrates a callous disregard of the responsibilities Aerodyne owes to the Court and to its opponents thereby warranting dismissal under Rule 37(b) and (d), as well as under Rule 41(b). *See, e.g., Anderson,* 724 F.2d 82, 84 (affirming dismissal of complaint with prejudice pursuant to Rule 37(b)(2)(C) for failure of plaintiff to comply with an Order compelling plaintiff to answer defendant's interrogatories, where four months had passed since the filing of the interrogatories and one month since the order); *Lorin Corp.,* 700 F.2d 1202 (affirming dismissal of complaint where the plaintiff, *inter alia,* after being ordered to make discovery, "provided incomplete answers to interrogatories, produced only a small fraction of documents, and never paid the award for costs and attorneys' fees."); *Garinson v. International Paper Company,* 714 F.2d 757, 758 (8th Cir.1983) (affirming trial court's dismissal of an employment discrimination action after finding that "a pattern of intentional delay is sufficiently egregious conduct to warrant dismissal with prejudice."); *Hindmon v. National-Ben Franklin Life Insurance Corporation,* 677 F.2d 617 (7th Cir.1982) (affirming dismissal of complaint pursuant to Fed.R.Civ.P. 37(b)(2)(C) and (d) for plaintiff's failure to comply with discovery order and because of plaintiff's submission of incomplete and improperly executed interrogatory answers more than four months after they were originally due, among other things); *Independent Investor Protective League,* 607 F.2d 530 (affirming dismissal of complaint pursuant to F.R.Civ.P. 37(b)(2)(C) and 37(d) for failure of plaintiff to serve interrogatory answers as ordered, and because plaintiff's attorneys made false statements in an attempt to convince defendant's counsel and the Court that plaintiff had, in fact, timely served its discovery responses; *Davis,* 588 F.2d 69 (affirming trial·court's decision to dismiss case with prejudice where plaintiff

and his attorney engaged in obstructive behavior); *Snead,* 102 F.R.D. 823 (trial court dismissed case under Rule 41(b) and 37(b) after finding *pro se* litigant engaged in willful pattern to obstruct discovery); *Holsey v. Collins,* 90 F.R.D. 646 (D.Md. 1981) remand on other grounds, 701 F.2d 165 (4th Cir.), on remand, 559 F.Supp. 50 (D.Md.1983).

### III.

Pursuant to the views set forth above, Heritage's motion to dismiss pursuant to Rule 41(b) and 37(b) and (d), will be granted. Additionally, the Court finds, pursuant to Rule 37(b) and (d), that the circumstances of this case warrant an Order requiring Aerodyne and its counsel to pay the reasonable expenses, including attorney's fees, caused by Aerodyne's failure to comply with Heritage's discovery requests and this Court's Order.

### ORDER

In accordance with the foregoing Memorandum, and for the reasons set forth therein, IT IS, this 3rd day of April 1987, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's renewed motion to dismiss and to impose sanctions BE and the same hereby IS, GRANTED;

2. That the complaint BE and the same hereby IS, DISMISSED with prejudice;

3. That the plaintiff and its counsel shall, within ten (10) days of the date of this Order, pay to defendant, through its counsel of record, the sum of One Thousand ($1000.00) Dollars, which the Court finds to be reasonable expenses, including attorneys fees, incurred by defendant because of plaintiff's failure to comply with defendant's discovery requests and this Court's Orders;

4. That defendant's motion for continuance of the trial BE and the same hereby IS deemed MOOT;

5. That the Clerk of the Court enter this case as CLOSED on this Court's docket.