**Ronald E. SMITH, Plaintiff,**

**v.**

**CESSNA AIRCRAFT COMPANY, Defendant.**

**James H. GARNER, Plaintiff,**

**v.**

**CESSNA AIRCRAFT COMPANY, Dwight Law, t/a Law Aviation, and C. William Pancake, Defendants.**

**Civ. A. No. S 87–2855.**

United States District Court, D. Maryland.

Feb. 14, 1989.

Thomas J. Harlan, Jr. and James M. McCauley, Norfolk, Va., Robert T. Hall, Warner F. Young, III, and Hall, Markle, Sickels & Fudala, P.C., Fairfax, Va., and Brian C. Parker and Gebhardt & Smith, Baltimore, Md., for plaintiff Ronald E. Smith.

Peter A. Greenburg, Morton A. Faller, and Meyer, Faller, Weisman and Greenburg, and John J. Tigert, VI and Kathryn A. Ledig, Washington, D.C., for plaintiff James H. Garner.

Mark A. Dombroff, Jonathan M. Stern, and Katten, Muchin, Zavis & Dombroff, Washington, D.C., for defendant Cessna Aircraft Co.

Charles E. Iliff, Jr. and Semmes, Bowen & Semmes, Baltimore, Md., for defendants Dwight Law, trading as Law Aviation, and C. William Pancake.

## MEMORANDUM

SMALKIN, District Judge.

Now pending before this Court is the motion of defendant Cessna Aircraft Company to dismiss with prejudice the amended complaint of plaintiff James H. Garner. Also pending is the motion to dismiss filed by defendants Dwight Law and C. William Pancake, which incorporates by reference Cessna's motion, and sets forth additional case law in support of the motion. Plaintiff Garner has opposed the motions; Cessna has replied. The motions assert that dismissal of Mr. Garner's complaint is warranted on the basis of both the clean hands doctrine and Fed.R.Civ.P. 41(b), as a result of Mr. Garner's admitted fraud and perjury during discovery.

For the reasons set forth below, the motions to dismiss will be *granted in part and denied in part*. Mr. Garner's claims for damages for lost income will be *dismissed*. His claims for other compensatory damages and for punitive damages, however, are *not dismissed*.

### Facts

Mr. Garner filed this lawsuit as a result of the March 3, 1985 crash of his single engine aircraft, which was manufactured (in 1956) by Cessna, inspected by Pancake, and repaired by Law. Mr. Garner, who was piloting the plane,[1] broke both his legs in the crash. The complaint sets forth causes of action for negligence and breach of warranty, seeking compensatory damages for personal injury and property damage from all three defendants, as well as punitive damages from Cessna. As part of his desired damages, Mr. Garner seeks compensatory damages for income which he lost in his contracting business as a consequence of the crash.

---

1. Ronald E. Smith, who has filed a separate lawsuit, was a passenger in the plane. Although the two suits have been consolidated for trial,

In the course of discovery, Cessna propounded interrogatories to Mr. Garner. Interrogatory Number 15 asked:

If *you* claim that you have been or will be rendered fully or partially incapable of engaging in your employment or profession, or that your earnings therefrom have been or will be impaired as a result of the accident:

. . . .

(d) State your net business or professional income from salary, wages, and tips as reflected by your federal income tax returns (including amendments) for 1981, 1982, 1983, 1984, 1985, 1986, and, when available, 1987.

(Cessna's Motion, Exhibit B, at 10–11 (emphasis in original)). In his answer, Mr. Garner listed his income as follows:

| Year | Income |
| --- | --- |
| 1982 | $29,500.00 |
| 1983 | 35,000.00 |
| 1984 | 41,102.35 |
| 1985 | 25,835.20 |
| 1986 | 44,441.68 |

(*Id.* at 12–13). At the end of his answers, Mr. Garner signed his name below the statement, "I declare under penalty of perjury that the foregoing is true and correct." (*Id.* at 22).

Similarly, Cessna's request for production of documents asked Mr. Garner to produce "[a]ll of the *pilot's* federal, state, and local tax returns for the years 1983, 1984, 1985, 1986, and, when completed 1987." (Cessna's Motion, Exhibit A, Request No. 16, at 5 (emphasis in original)). In response, Mr. Garner declared, "The tax returns sought will be produced." Mr. Garner then produced documents purporting to be his tax returns for 1986 and 1987, and part of his tax documents for 1985. The Form 1040's for 1986 and 1987 bore Mr. Garner's signature under the statement, "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." (Cessna's Motion, Exhibit C).

---

Mr. Smith's lawsuit is not at issue in the pending motions.

Mr. Garner's sworn assertions regarding his income tax data for the years in question were false. After Mr. Garner failed to produce the rest of the requested tax returns, Cessna's counsel asked for the documents. Mr. Garner's attorney then notified Cessna's counsel that, rather than produce the documents, Mr. Garner would execute an authorization which would allow Cessna to get the tax returns directly from the Internal Revenue Service. When Mr. Garner's attorney asked his client to execute the authorization, however, he learned for the first time that his client had in fact failed to file any tax returns for the years 1983 through 1987.

Mr. Garner then filed a supplemental answer to Interrogatory Number 15(d):

> The amounts stated with respect to the years 1983 through 1986 in the plaintiff Garner's original answers to this interrogatory are probably in error. The purported portions of income tax returns furnished by the plaintiff to the defendants through counsel, as being portions of plaintiff's income tax returns are, in fact, not portions of any income tax returns filed by the plaintiff with the Internal Revenue Service. Income tax returns for the plaintiff for the years 1983 through 1987 are being prepared with the assistance of John J. Canto, a certified public accountant identified below, and copies thereof will be furnished to the defendants as soon as the same can be completed.

(Cessna's Motion, Exhibit D, at 2). Cessna finally received the tax returns on September 30, 1988, after Mr. Garner filed them with the help of Mr. Canto. (*See* Cessna's Motion, Exhibit E).

As a result of these developments, Cessna sought to redepose Mr. Garner on November 11, 1988.[2] There, Mr. Garner admitted that at his earlier deposition he had "hedged the answer" when asked if he had filed his tax returns. (Cessna's Motion, Exhibit F, at 282). He acknowledged, "The answer I gave implied that I had filed my income tax returns." (*Id.* at 283). He further admitted that he knew he was violat-

ing the law by failing to file returns. (*Id.* at 312).

Turning to the issue of the answers to interrogatories, Cessna's attorneys asked Mr. Garner, "So you wanted the lawyers to believe that your answer to Interrogatory Number 15–D was coming from federal income tax returns, didn't you?" Mr. Garner conceded, "I assumed that that is what you would think, yes." (*Id.* at 324). Cessna's attorneys pressed the point:

Q. So your affirmation at the end that this is true under penalty of perjury, that is not accurate, is it?

A. The answers to the interrogatories in that instance is [*sic*] not correct.

Q. So your statement you declare under penalty of perjury that the foregoing answers and responses are true and correct, that certification signed by you was not accurate, was it?

A. In this case, that is correct.

Q. So you committed perjury in that case, didn't you?

A. I would believe you would call it that, yes.

Q. What would you call it? You would call it perjury, too?

A. Yes.

(*Id.* at 325).

Thus, Mr. Garner has conceded that he committed fraud by submitting false tax returns in response to Cessna's request for production of documents. Moreover, he has admitted lying under oath both in his answers to interrogatories and at his deposition when questioned about his tax returns and income. Based on these facts, the defendants have moved to dismiss Mr. Garner's amended complaint, asserting that both Mr. Garner's unclean hands and his violation of the Federal Rules of Civil Procedure warrant dismissal of his lawsuit.

### Clean Hands Doctrine

"He who comes into equity must come with clean hands." As traditionally applied in courts of equity, this maxim is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with ineq-

---

**2.** The original deposition of Mr. Garner was taken in June, 1988.

uitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814–15, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). *See also* 1 J. Pomeroy, *A Treatise on Equity Jurisprudence* section 397, at 738 (4th ed. 1918). The plaintiff's misconduct must be directly related to the subject of the suit:

> [Courts] apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147–48, 78 L.Ed. 293 (1933) (citations omitted).

The purpose of the maxim is not to protect the parties; rather, it is to safeguard the judicial process. *Mas v. Coca–Cola Co.*, 163 F.2d 505, 507 (4th Cir.1947) (*Mas I*). As the Supreme Court has noted, "tampering with the administration of justice.... is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944). *See also Precision Instrument*, 324 U.S. at 814–15, 65 S.Ct. at 997.

Although the maxim originated in courts of equity, it now extends to actions at law, such as the instant suit for damages. *Tempo Music, Inc. v. Myers*, 407 F.2d 503,

507 n. 8 (4th Cir.1969) (referring to the doctrine as equitable estoppel). The Fourth Circuit has deemed any other result illogical: "One who has had the door of a court of equity closed in his face because of his fraud may not have relief by the simple device of beginning again and labeling his suit an action at law for damages." *Mas v. Coca–Cola Co.*, 198 F.2d 380, 381 (4th Cir. 1952) (*Mas II*) (upholding dismissal of patent action at law for damages, following dismissal, on the ground of "unclean hands," of equitable suit involving same patent). *See also Buchanan Home & Auto Supply Co. v. Firestone Tire & Rubber Co.*, 544 F.Supp. 242, 245 (D.S.C.1981) (analyzing *Mas I* and *Tempo* ).

Moreover, although most cases applying the doctrine involve situations in which the plaintiff's hands were unclean at the time suit was filed, courts have also applied the maxim when, as here, the plaintiff's hands became soiled during the course of litigation.[3] *Mas I*, 163 F.2d at 508 (fabrication of testimony and subornation of perjury are grounds for applying doctrine). As one district court declared:

> [I]t would be strange if a court of equity had power—because of public policy for its own protection—to throw out a case because [the plaintiff] *entered* with unclean hands and yet would have no power to act if the unconscionable conduct occurred while the case was in court. It would be as fantastic as to think that a householder could eject one who entered his house to steal the family silverware but could not eject a guest who entered innocently but whom he caught later stealing the silverware.

*American Insurance Co. v. Lucas*, 38 F.Supp. 896, 921 (W.D.Mo.1940), *aff'd*, 129 F.2d 143 (8th Cir.), *cert. denied*, 317 U.S. 687, 63 S.Ct. 257, 87 L.Ed. 551 (1942) (emphasis in original) (following court's entry of temporary injunction allowing increased insurance rates, companies bribed insur-

---

**3.** The Court recognizes that Mr. Garner's misconduct began years ago, when he first failed to file his tax returns. The mere failure to file the returns, however, does not relate directly to this litigation. Mr. Garner's failure to file the returns became pertinent to this suit only when, in response to discovery requests, he led the defendants to believe that the income information he was giving them was in fact based on filed tax returns.

ance commissioner to approve rates and settle lawsuits). "The only difference is as to what the court can do at the time the situation becomes known. Obviously, it can do anything *then* to prevent the guilty party *realizing the fruits of his rascality.*" *Id.* at 921–22 (emphasis in original).

The court possesses broad discretion in determining whether and how to apply the maxim upon learning that a plaintiff's hands are unclean. *Precision Instrument,* 324 U.S. at 814, 65 S.Ct. at 997. Thus, courts "are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245–46, 54 S.Ct. 146, 148, 78 L.Ed. 293 (1933). Generally, the clean hands doctrine completely bars a plaintiff *in limine.* Nevertheless, courts have recognized that if the fraud relates only to some of the plaintiff's claims, then the entire suit need not be dismissed. Instead, the court need only bar the plaintiff's recovery for the claims tainted by the misconduct. *Belmont Laboratories v. Heist,* 300 Pa. 542, 554, 151 A. 15, 19 (1930) (trade secret infringement); *Barnes v. Barnes,* 282 Ill. 593, 597, 118 N.E. 1004, 1005 (1918) (accounting of estate); *Munn & Co. v. Americana Co.,* 83 N.J.Eq. 309, 313, 91 A. 87, 88 (1914) (injunction against use of trade name). Thus, "[p]roof of misconduct as to part of a transaction does not necessarily prevent the assertion of rights arising from the remainder of it, which is legally unobjectionable." *Comstock v. Thompson,* 286 Pa. 457, 461–62, 133 A. 638, 640 (1926) (action to recover interest in land). For example, in *Barnes,* the plaintiff sought an accounting of her brother's estate, which consisted mostly of stocks and bonds. Among the multitude of documents entered into evidence were twelve letters which the plaintiff had forged. The court found that the plaintiff's fraud only prevented her from recovering the property to which the letters related. *Barnes,* 282 Ill. at 597, 118 N.E. at 1005.

It can hardly be disputed that Mr. Garner's hands are unclean with respect to a matter at issue in this litigation. Mr. Gar-

ner has filed suit, seeking damages resulting from the crash of his plane. As part of those damages, he seeks compensation for the income he lost while recuperating from his injuries. His tax returns are critical to allowing the defendants to assess accurately their potential liability for these damages. By providing the defendants with tax documents that were admittedly false, and by lying in his deposition and answers to interrogatories, Mr. Garner has abused the discovery system and has deprived the defendants of essential information. *See Buchanan,* 544 F.Supp. at 246 (plaintiff's fraud in submitting falsified adjustment forms to defendant "hopelessly obscure[d] any possibility of accurately resolving" validity of plaintiff's claim). This information does not derive its importance only from its relevance at trial. Rather, discovery as to economic damages provides a defendant with information upon which to evaluate demands and offers in the pretrial stage. Thus, the fact that the fraud and perjury are discovered before trial does not vitiate the taint upon the litigation process as a whole.

█ The Court believes it appropriate, therefore, to dismiss Mr. Garner's claims for damages for lost income, because the false tax and income information provided by Mr. Garner was directly relevant to such claims. Although Mr. Garner has since provided his genuine, albeit belatedly filed, tax returns, his previous deception during discovery constituted a fraud on this Court, for reasons stated above. Moreover, the Court is disturbed that Mr. Garner, who for five years failed to pay his taxes, now seeks to vindicate his claim through the federal court system, itself dependent upon the prompt and honest reporting and payment of federal taxes.

The Court, however, does not deem it necessary or proper to dismiss Mr. Garner's complaint *in toto.* The primary question in this case is the defendants' liability *vel non* for the plane crash; the validity of the tax documents relates only to the issue of damages for lost income. While the Court recognizes that Mr. Garner's admitted fraud and perjury concerning the tax

documents may cast doubt upon his veracity in other matters, (see Cessna's Motion, Exhibit F, at 418), the defendants will be able fully to attack Mr. Garner's credibility at trial. Thus, in the instant case, protection of the Court itself, which the maxim seeks to safeguard, does not mandate dismissal of the entire lawsuit.

### Rule 41(b)

As an alternative ground in support of their motions, the defendants assert that Mr. Garner's perjury at his deposition and in his answers to interrogatories constitutes a violation of the Federal Rules of Civil Procedure, thus warranting dismissal pursuant to Rule 41(b). The rule provides, in pertinent part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." Fed.R. Civ.P. 41(b).

Most cases applying Rule 41(b) address either the plaintiff's failure to prosecute or the failure to comply with court orders; few cases consider the ground at issue here—failure to obey the rules themselves. As Wright and Miller note, "Dismissal for failure to comply with 'these rules' ... is an amorphous ground that, if read literally, would allow dismissal for the most trivial noncompliance with the rules.... Dismissals on this ground are considered in connection with the particular rule that has been invoked by defendant." 9 C. Wright & A. Miller, *Federal Practice and Procedure* section 2369, at 191 (1971). *See, e.g., Nassau County Association of Insurance Agents, Inc. v. Aetna Life & Casualty Co.,* 497 F.2d 1151, 1154 (2d Cir.), *cert. denied,* 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974) (dismissal for misjoinder, under Rule 20(a), of 164 defendants; plaintiff's actions were "a gross abuse of procedure").

The defendants concede that no rule specifically prohibits fraud and perjury in discovery. They assert, however, that a prohibition against such conduct is implicit in each rule which requires the giving of a response under oath. (Cessna's Motion, at 13–14). Two such rules have particular relevance here. Rule 30 provides in pertinent part:

> Examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence. The officer before whom the deposition is to be taken shall put the witness on oath and shall personally, or by someone acting under the officer's direction and in the officer's presence, record the testimony of the witness.

Fed.R.Civ.P. 30(c) (oral depositions). As discussed above, Mr. Garner has admitted lying during his deposition in June, 1988. Similarly, Rule 33 states:

> Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them.

Fed.R.Civ.P. 33(a). Mr. Garner has also admitted lying in his answer to Interrogatory Number 15(d) concerning his income.

It is true that neither Rule 30 nor Rule 33 specifically demands that answers in depositions and interrogatories be truthful. Nevertheless, each Rule's requirement that the party give answers under oath would be thwarted if giving false answers constituted compliance with the Rule. Thus, one court has noted: "An implicit condition in any order to answer an interrogatory is that the answer be true, responsive and complete. A false answer is in some ways worse than no answer; it misleads and confuses the party." *Evanson v. Union Oil Company of California,* 85 F.R.D. 274, 277 (D.Minn.1979), *appeal dismissed,* 619 F.2d 72 (8th Cir.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 102, 66 L.Ed. 2d 38 (1980) (imposing Rule 37 sanctions for failure to obey court order to answer interrogatories truthfully). *See also Hunter v. International Systems & Controls Corp.,* 56 F.R.D. 617, 631 (W.D.Mo.1972) (imposing Rule 37 sanctions and stating: "Parties like witnesses are required to state the truth, the whole truth and noth-

ing but the truth in answering written interrogatories."). The need for truthful answers certainly applies to depositions as well. Indeed, Mr. Garner's perjury in both discovery mechanisms undoubtedly misled the defendants in assessing their potential liability for his lost income. Also relevant is the manner in which the misconduct came to light. Mr. Garner did not suddenly develop a case of cold feet; rather, he only admitted misconduct when it became apparent to him that the IRS was about to be asked to search for nonexistent forms. Thus, this Court finds that Mr. Garner's perjury during discovery constitutes a violation of the Federal Rules of Civil Procedures warranting sanction under Rule 41(b).

The choice of an appropriate sanction rests within the discretion of the trial court. Moreover, although dismissal with prejudice is a harsh sanction indeed, the Supreme Court has declared that

> the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam) (upholding dismissal of case as sanction for violation of Rule 37). *See also Link v. Wabash Railroad*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962) (affirming court's *sua sponte* dismissal under Rule 41(b) for failure to prosecute). Because of the severity of dismissal as a sanction, the Fourth Circuit has established four criteria which the district court must consider when Rule 41(b) is invoked:

> (1) the degree of personal responsibility of the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a " 'drawn out history' of 'deliberately proceeding in a dilatory fashion;' " and (4) the effectiveness of sanctions less drastic than dismissal.

*Davis v. Williams*, 588 F.2d 69, 70 (4th Cir.1978) (quoting *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir.1976)). *See also Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974) (setting forth four factors for first time; dismissal inappropriate sanction for attorney's failure to subpoena necessary medical witnesses for trial); *McCargo*, 545 F.2d at 396 (elaborating on *Reizakis* factors; dismissal inappropriate sanction for attorney's failure to file pretrial order on time). Although the factors listed above specifically pertain to dismissal for failure to prosecute, analogous concerns are at issue here.

Without a doubt, Mr. Garner is solely responsible for his perjury. Indeed, as discussed above, his attorney was unaware until September, 1988 that Mr. Garner had not filed the tax returns on which he had based his earlier discovery responses. Thus, this case differs from those in which the attorney, rather than the client, was at fault. *See, e.g., McCargo*, 545 F.2d at 396; *Reizakis*, 490 F.2d at 1135. *Cf. Aerodyne Systems Engineering, Ltd. v. Heritage International Bank*, 115 F.R.D. 281, 288 (D.Md.1987) (dismissal appropriate when plaintiff's preoccupation with bidding on government contracts contributed to delays); *Dabney v. Burrell*, 67 F.R.D. 132, 133 (D.Md.1975) (dismissal for plaintiff's failure to appear for trial due to intoxication; *pro bono* counsel not to blame).

Moreover, as already noted, Mr. Garner's conduct has prejudiced the defendants' ability accurately to assess their risk of liability. In his response, Mr. Garner asserts that his ultimate production of the genuine tax returns dissipated any prejudice to the defendants. (*See* Garner's Opposition, at 11). The defendants point out, however, that Mr. Garner's perjury throughout discovery casts serious doubt on the credibility of the rest of his testimony, both during discovery and at trial. (Cessna's Motion, at 15). As discussed above regarding the clean hands doctrine, the Court believes the defendants have sufficient means available to attack Mr. Garner's credibility at trial. Nevertheless, the Court is not persuaded that the belated production of the tax re-

turns completely undoes the damage caused by Mr. Garner's earlier perjury. *Compare Aerodyne,* 115 F.R.D. at 288 (inadequate responses to discovery requests prejudiced defendant's ability to assess claims) *with Bush v. United States Postal Service,* 496 F.2d 42, 44–45 (4th Cir.1974) (dismissal for failure to prosecute unwarranted because no prejudice to defendant).

With regard to the third factor, Mr. Garner stresses that this case has "proceeded with dispatch," thus treating this criterion as applicable only to dismissal for lack of prosecution. (Garner's Opposition, at 11). The defendants, however, interpret the factor more broadly, emphasizing Mr. Garner's repeated and deliberate deception during discovery. (Cessna's Motion, at 15). The Court agrees with the defendants that the focus here must be on the intentional nature, as well as the pattern, of Mr. Garner's conduct. Mr. Garner has admitted that he deliberately provided false responses to three discovery mechanisms: the answers to interrogatories, the request for production of documents, and the testimony during his deposition.

As the fourth factor, the Court must consider the effectiveness of sanctions less drastic than a complete dismissal. For the reasons set forth in the discussion above of sanctions for Mr. Garner's unclean hands, the Court does not believe a complete dismissal is warranted. *Cf. Aerodyne,* 115 F.R.D. at 289 (less drastic sanctions ineffective, in light of court's prior orders). Mr. Garner's violations of the Federal Rules of Civil Procedure pertain only to his request for damages for lost income. Therefore, dismissal of these damage claims is an appropriate and sufficient sanction for Mr. Garner's perjury.

For the foregoing reasons, defendants' motions to dismiss plaintiff Garner's amended complaint are *granted in part and denied in part.*

### ORDER

For the reasons stated in the foregoing Memorandum, IT IS, this 14th day of February, 1989, by the Court, ORDERED:

1. That defendants' motions to dismiss the amended complaint of plaintiff James H. Garner BE, and the same hereby ARE, GRANTED with respect to plaintiff's claims for damages for lost income, for the plaintiff's violation of both the clean hands doctrine and the Federal Rules of Civil Procedure;

2. That in all other respects defendants' motions to dismiss the amended complaint of plaintiff James H. Garner BE, and the same hereby ARE, DENIED; and

3. That the Clerk of Court mail copies of the foregoing Memorandum and of this Order to counsel for the parties.